972 F.2d 350
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Charlene WILLIS, Plaintiff-Appellant,
v.
UNITED STATES of America, Defendant-Appellee.
 No. 91-4111.
 United States Court of Appeals, Sixth Circuit.
 July 29, 1992.
 
 Before RALPH B. GUY, Jr. and BOGGS, Circuit Judges, and RONEY, Senior Circuit Judge.*
 RALPH B. GUY, Jr., Circuit Judge.
 
 
 1
 The plaintiff, Charlene Willis, appeals the district court's dismissal of her suit under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b) and 2671, et seq., for injuries allegedly caused by negligence of the Postal Service. A plaintiff is barred from bringing suit under the FTCA unless an administrative claim is first presented to the appropriate federal agency within two years after the claim accrues. 28 U.S.C. § 2401(b). The court found that it lacked subject matter jurisdiction because Willis had failed to present her claim to the Postal Service within the time required. We agree and affirm.
 
 I.
 
 2
 The plaintiff alleges that on June 13, 1988, she tripped on a broken sidewalk outside the Middletown Post Office in Ohio and broke her arm. On August 26, 1988, Willis's attorney, Bruce B. Gudenkauf, wrote a letter to the Superintendent of Postal Operations of Middletown regarding plaintiff's injury. The United States Postal Service MSC Accident Investigator, Curtis McKinney, Sr., sent a letter, dated September 9, 1988, to Gudenkauf stating that he had received Gudenkauf's letter of August 26. McKinney indicated that he needed additional information and requested that it be sent to a specific address in Cincinnati.
 
 
 3
 On June 8, 1990, Gudenkauf mailed a Standard Form 95 claim form with the appropriate documentation to the specified address. The envelope, mailed from Middletown, contained the wrong zip code and was not received at the Cincinnati address until June 14, 1990. The two-year statute of limitations expired on June 13, 1990.
 
 
 4
 The Postal Service subsequently notified Gudenkauf that plaintiff's claim would be denied because it was not timely presented within the meaning of the statute to the Postal Service. 28 U.S.C. § 2401(b); 39 C.F.R. § 912.5. "A claim [is] deemed to have been presented when the U.S. Postal Service receives from a claimant ... written notification of an incident, accompanied by a claim for money damages in a sum certain." 39 C.F.R. § 912.5(a).
 
 
 5
 Plaintiff then filed this action in the district court for relief pursuant to the FTCA. The defendant filed a motion to dismiss for lack of subject matter jurisdiction. The district court concluded that the timely filing of an administrative claim with the Postal Service was a prerequisite to the court's jurisdiction. The court found that this prerequisite could not be waived, was not subject to estoppel, and had not been met. The court noted, however, that it did not have before it a copy of the August 26 letter and that it would reconsider its decision if that letter contained the information required by 39 C.F.R. § 912.5(a).
 
 
 6
 Plaintiff subsequently submitted the letter to the district court with an accompanying motion for reconsideration. The court denied the motion on September 19, 1991, because the letter "failed to make a claim for money damages in a sum certain" as required by section 912.5. (App. 13). Plaintiff filed this timely appeal.
 
 II.
 
 7
 Plaintiff argues that the defendant is estopped from asserting the statute of limitations because counsel detrimentally relied on McKinney's request that the required information be sent to Cincinnati. Plaintiff asserts that counsel did not know that he could have met the statutory requirements by presenting the requested information at the Middletown Post Office, 39 C.F.R. § 912.4, and would have researched the issue but for McKinney's request. Plaintiff further argues that the general rule that the doctrine of estoppel cannot be invoked against the government does not apply because the Post Office, a quasi-independent commercial enterprise, is the real party in interest. See Portmann v. United States, 674 F.2d 1155 (7th Cir.1982) (plaintiff seeking insurance indemnification may assert equitable estoppel against Postal Service on basis of representations made by postal employee). Moreover, she claims that the statute of limitations poses no jurisdictional bar because the Post Office is generally capable of being sued. 39 U.S.C. § 409. Finally, Willis suggests that the Middletown Post Office received the required information within the statutory period because the documents were mailed in Middletown on June 8 and could have arrived at the Middletown Post Office on their way to Cincinnati no later than June 11, 1990. We consider these claims together and find them without merit.
 
 
 8
 The mere mailing of documents does not constitute presentment within the meaning of 28 U.S.C. § 2401(b). See Bailey v. United States, 642 F.2d 344, 347 (9th Cir.1981). We refuse to adopt an exception to this rule for claims involving the Postal Service. We agree with the district court that Willis presented her claim after the statute of limitations had expired.
 
 
 9
 This circuit has long recognized that the timely filing of an administrative claim is a jurisdictional prerequisite for which there is no equitable exception. Rogers v. United States, 675 F.2d 123, 124 (6th Cir.1982) (per curiam); accord Houston v. United States Postal Serv., 823 F.2d 896 (5th Cir.1987), cert. denied, 485 U.S. 1006 (1988). Whether or not the Post Office is the real party in interest is irrelevant. Congress conditioned the FTCA's waiver of sovereign immunity upon compliance with the statute of limitations. United States v. Kubrick, 444 U.S. 111, 117-18 (1979). Although the Post Office may generally sue and be sued, its capacity to be sued in tort is limited by the requirements of the FTCA. 39 U.S.C. § 409(c);[1] see Loeffler v. Frank, 486 U.S. 549, 557 (1988) (concluding that Post Office's capacity to sue and be sued only limited as specified in section 409 of the Postal Reorganization Act). The Postal Reorganization Act explicitly states:
 
 
 10
 Unless otherwise provided in this title, the provisions of title 28 relating to service of process, venue, and limitations of time for bringing action in suits in which the United States, its officers, or employees are parties ... shall apply in like manner to suits in which the Postal Service, its officers, or employees are parties.
 
 
 11
 39 U.S.C. § 409(b) (emphasis added). Section 409 demonstrates Congress's intent that the Postal Service "should be treated as a government entity rather than a private business when application of [the statute of limitations] is at issue." Mahoney v. United States Postal Serv., 884 F.2d 1194, 1200 (9th Cir.1989) (statute of limitations is jurisdictional in Title VII claims involving the Postal Service). We hold that there is no "Postal Service exception" to the jurisdictional requirement of the FTCA that an administrative claim be timely filed. Accordingly, the doctrine of estoppel cannot apply.
 
 
 12
 Moreover, we reject Willis's argument that equitable tolling, even if available for certain claims involving the Postal Service, is warranted on these facts.
 
 
 13
 AFFIRMED.
 
 
 14
 BOGGS, Circuit Judge, dissenting.
 
 
 15
 Because I find that Willis fulfilled the statutory requirement that she present her administrative tort claim to the Postal Service in this case, I respectfully dissent.
 
 
 16
 * I make only a few additions to the facts as described by the majority. Willis's attorney, Bruce P. Gudenkauf, sent the following letter, dated August 26, 1988, to Angelo Mancini, the Superintendent of Postal Operations in the Middletown, Ohio Post Office:
 
 Dear Sir:
 
 17
 Please be advised that this office was retained by the above referenced person [Charlene Willis] to represent her in connection with the presentation of a claim under the Federal Torts Claim Act [sic] with respect to personal injuries she sustained as a result of a fall at the Middletown Post Office which occurred on or about June 13, 1988.
 
 
 18
 Kindly direct any further inquiries regarding this matter to this office. Also, please furnish us with any statements that your agency may have taken of our client.
 
 
 19
 Furthermore, if your agency has medical payments insurance coverage, kindly also advise us of the name of your insurance company and the name, address, and telephone number of the adjuster who will be handling this claim, or of your insurance agent.
 
 
 20
 Finally, Mrs. Willis is continuing to be treated for her injury. As soon as we are able to obtain a written report by the attending physician showing the degree of permanent disability, if any, and the prognosis, we shall prepare and file an SF 95, together with the appropriate documentation.
 
 
 21
 On September 9, 1988, Curtis McKinney, Claims Coordinator of the Cincinnati Division of the U.S. Postal Service, notified Gudenkauf that he had received his letter dated August 26, 1988, but that he required some additional information to be mailed to him in Cincinnati. McKinney sent the following letter to Gudenkauf:
 
 
 22
 I am acknowledging receipt of your letter that was sent to the Middletown Post Office.
 
 
 23
 I was not able to interview your client when I arrived at the Middletown Post Office. Mr. Mancini was not able to make arrangements with her while I was there. I need to get a statement from her and I need to photograph the shoes that she was wearing at the time of the alleged fall.
 
 
 24
 In support of a claim for personal injury, you will have to submit a written report by the attending physician, showing the nature and extent of injury, the nature and extent of treatment, the degree of disability, if any, the prognosis, the period of hospitalization or incapacitation, attaching itemized bills for medical or hospital expenses actually incurred. I need your client to sign an authorization to release medical information.
 
 
 25
 Send all requested documentations, along with the completed SF-95 to: Curtis McKinney, 1591 Dalton Avenue, Cincinnati, OH 45234-9721.
 
 
 26
 Gudenkauf received McKinney's letter, but took no further action in this matter until June 1990. On June 8, 1990, Gudenkauf had his secretary mail a Standard Form 95, accompanied by the appropriate documentation, to McKinney at the specified address. Unfortunately for Willis, the envelope, though otherwise correctly addressed, carried the wrong zip code, "45324" rather than "45234." McKinney did not receive the letter until June 14, 1990. The statute of limitations for filing the required administrative tort claim expired on June 13, 1990.
 
 
 27
 Gudenkauf's secretary placed the envelope containing the documents in a mailbox on Friday, June 8. According to the deposition testimony of Larry Underwood, the current Postal Service Claims Coordinator for the Cincinnati Division, a letter mailed in Middletown before 5:00 p.m. would normally be sorted in the Middletown Post Office and would reach the main Post Office on Dalton Avenue in Cincinnati the same evening. It would then be delivered to the Claims Coordinator's office the next day. Thus, as Underwood testified, even if we assume that Willis's letter was not picked up from the mailbox until the following Monday, June 11, it would still have been received by the appropriate office by June 12, if it had been addressed to the appropriate zip code.
 
 
 28
 However, while the envelope was addressed correctly to Dalton Avenue in Cincinnati, it contained the zip code from Fairborn, Ohio. Although no one is sure of the exact route of the letter, Underwood theorized that Willis's claim went first to the Middletown Post Office and then directly to the Fairborn Post Office. In all probability, the mistaken zip code was corrected in Fairborn and the letter was then sent on to Cincinnati. It was not stamped by the Claims Coordinator's office until June 14, one day after the expiration of the statute of limitations.
 
 
 29
 Willis argues that the doctrine of equitable estoppel should apply to the government in this case. She contends that the statute did not require that the Standard Form 95 be mailed to McKinney in Cincinnati, but that presenting the claim and the request for a sum certain to the Middletwon Post Office would have been sufficient under the statute. Her basic argument is that the McKinney gave false information when he notified Gudenkauf that the required forms needed to be mailed to him in Cincinnati. Willis contends that if her attorney did not think he had to mail the forms to Cincinnati, he would have taken the forms to the Middletown Post Office and, therefore, filed the administrative claim within the allotted time period. Willis claims that, given these facts, the government should be estopped from asserting the statute of limitations defense. The district court held that the jurisdictional requirements under the Federal Tort Claims Act are not subject to equitable estoppel.
 
 II
 
 30
 The first issue here is whether the filing of an administrative claim as required by 28 U.S.C. § 2675(a) within the two-year statue of limitations period for filing such a claim set out in 28 U.S.C. § 2401(b) is a jurisdictional requirement for a tort suit against the federal government that is not subject to the doctrine of equitable estoppel. The district court held that the doctrine could not be invoked to give it subject matter jurisdiction where the administrative tort claim was not presented within the limitations period. The court held that the suit was time-barred by the application of 28 U.S.C. § 2401(b) and 39 C.F.R. § 912.5.
 
 
 31
 It is undisputed that the United States cannot be sued without its consent, United States v. Sherwood, 312 U.S. 584 (1941), and that the specific terms of that consent define a federal court's jurisdiction to entertain such a suit. United States v. Testan, 424 U.S. 392 (1976). When the United States consents to be sued, Congress may define the conditions under which suits will be permitted. Kendall v. United States, 107 U.S. 123 (1883); Garrett v. United States, 640 F.2d 24 (6th Cir.1981).
 
 
 32
 Congress waived sovereign immunity for tort actions against the United States, its agencies and/or officers acting within their official capacities in the Federal Tort Claims Act, 28 U.S.C. § 2671, et seq. Section 2678(a) of Title 28 provides, in pertinent part:
 
 
 33
 An action shall not be instituted against the United States for money damages for injury or loss of property or personal injury ... caused by the negligent or wrongful act or omission by any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. The failure of any agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section. (Emphasis added).
 
 
 34
 In addition, the statute of limitations for the Federal Tort Claims Act is found in 28 U.S.C. § 2401(b):
 
 
 35
 A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented.
 
 
 36
 Willis wanted to file a tort claim against the Middletown Post Office and, therefore, was first required to "present" the claim to the Postal Service. According to 39 C.F.R. § 912.5(a):
 
 
 37
 A claim shall be deemed to have been presented when the U.S. Postal Service receives from the claimant, his duly authorized agent or legal representative an executed Standard form 95, claim for Damage or Injury, or other written notification of an incident, accompanied by a claim for money damages in a sum certain for injury to or loss of property, personal injury, or death alleged to have occurred by reason of the incident. (Emphasis added).
 
 
 38
 Further, a "claim is usually filed with the postmaster of the office within the delivery limits of where the accident happened, but may be filed at the Office of the Postal Service, or sent directly to the Assistant General Counsel, Claims Division, U.S. Postal Service, Washington, D.C. 20260." 39 C.F.R. § 912.4 (emphasis added).
 
 III
 
 39
 Compliance with these statutory conditions is a prerequisite to the jurisdiction of a federal court. Rogers v. United States, 675 F.2d 123 (6th Cir.1982); Garrett v. United States, 640 F.2d 24, 25 (6th Cir.1981); Houston v. United States Postal Serv., 823 F.2d 896 (5th Cir.1987), cert. denied, 485 U.S. 1006 (1988). In other words, the statute of limitations is a condition of the Federal Tort Claims Act's waiver of sovereign immunity. United States v. Kubrick, 444 U.S. 111, 117-18 (1979). The Houston court specifically stated:
 
 
 40
 These limitations periods are jurisdictional. Equitable considerations that may waive or toll limitations periods in litigation between private parties do not have that same effect when the suit is brought against the sovereign. This is so because under the doctrine of sovereign immunity the government's exposure to liability can be no greater than it permits.
 
 
 41
 Houston, 823 F.2d at 902 (citations omitted). This Circuit has also noted that the statutory conditions "are jurisdictional requirements, not capable of waiver or subject to estoppel." Garrett, 640 F.2d at 26. More recently, this court again stated that "[t]here is no equitable exception to the jurisdictional prerequisites of the Federal Tort Claims Act in this Circuit and we decline to create one." Rogers, 675 F.2d at 124 (citing Shelton v. United States, 615 F.2d 713 (6th Cir.1980)). Willis, relying on Portman v. United States, 674 F.2d 1155 (7th Cir.1982), claims that the doctrine of equitable estoppel can be invoked against the United States Postal Service. This assertion is contrary to the law of this Circuit and the overwhelming majority of the other Circuits. Thus, I agree with the majority that the doctrine of equitable estoppel cannot apply in this case.
 
 IV
 
 42
 However, use of the doctrine of equitable estoppel is not necessary for Willis to prevail here. There are three levels of authority regarding what must be done to constitute compliance with the statute of limitations in our case. The first is the statute. It requires that a proper notice be "presented ... to the appropriate Federal agency...." 28 U.S.C. 2678(a). The majority holds that "mere mailing of documents does not constitute presentment within the meaning of 28 U.S.C. § 2401(b)." The court then makes the bare assertion that this is a universal rule to which it refuses "to adopt an exception ... for claims involving the Postal Service." The court's sole support on this crucial issue in our case is the Ninth Circuit case of Bailey v. United States, 642 F.2d 344, 347 (9th Cir.1981).
 
 
 43
 In Bailey, the court sensibly held that a claim is not "presented" to the Air Force at the time it is put into the control of the Postal Service, a completely different federal agency. However, I believe it is a different, and much more difficult, question whether a claim is "presented" to the Postal Service, when it is put into the custody of, and indeed handled by numerous different officials of, the Postal Service itself. Looking only to the words of the statute, which simply speak broadly of the agency itself, I would hold that the form was "presented."
 
 
 44
 The Postal Service also seeks to rely on its own regulations that further define and modify the term "presented." Passing for the moment the question of whether an agency may legally make it more difficult to file a claim than the statute provides for, I do not see that the regulations provide any comfort for the Postal Service.
 
 
 45
 Section 912.5(a) of 39 C.F.R. says that a form is presented when "the Postal Service" receives the form. This might be considered merely tautological. When one party "presents" something, it may imply that there must be another party that "receives" it. This regulation would also imply that placing a form into the hands of some other party or service, for example a private messenger service, UPS, or Federal Express, or a friend who is asked to deliver the form, will not suffice, as the Postal Service has not become involved to "receive" the form as of that point. In no way, however, does this regulation imply that the Postal Service, as an entity, does not receive a document when it has the document in hand and is handling it.
 
 
 46
 The final source of authority is 39 C.F.R. § 912.4. This section appears to try to specify locations for presentment or receipt of FTCA claim forms. Passing again the question of whether the Postal Service may by regulation make presenting a claim more difficult than the statute does (could it require that all forms be timely received in Nome or Guam?), the regulation does not defeat Willis's claim to have "presented" the claim form in a timely fashion.
 
 
 47
 In the first place, mandatory language is never used in the section. Section 912.4 makes three statements with regard to the location where a claim is "filed":
 
 
 48
 (1) it "is usually filed with the postmaster" for the area where the accident happened;
 
 
 49
 (2) it "may be filed at the Office of the Postal Service" [no indication of who, where, or what this is], and
 
 
 50
 (3) it "may be ... sent directly" to a specific office in Washington.
 
 
 51
 There are no words of limitation or prohibition in this regulation. There is nothing that says that the three specified means of filing are exclusive, or that the listing of the three specified means obviates the possibility of other means of filing as well. Finally, the completely open-ended nature of the phrase "the Office of the Postal Service" further implies an absence of rigidly defined locations where filing must occur. Also, of course, the word "filing" is not the term used in the statute or in the definition in § 912.5(a). Thus, the inescapable conclusion is that there is no requirement of a particular mode or location where the claim must be "presented."
 
 
 52
 It is also noteworthy that the location specified in Mr. McKinney's letter does not appear to be any of the three location specified in § 912.4. Could the Post Office claim that it had not "received" the form when it got there? We know that the letter was placed in a mailbox on June 8, a Friday. By June 14 it was in Cincinnati, even though it was addressed with a zip code in Fairborn, Ohio. It is not entirely clear whether the letter actually went to Fairborn, or simply sat around the Middletown Post Office until the zip code problem was resolved. It is not even claimed explicitly that the wrong zip code caused the six-day journey. It simply could have been the handling practices of the Post Office.
 
 
 53
 It seems extremely churlish of the Post Office to contend that a form has not been "presented" to it; that it has not "receive[d]" the form, and that the claim has not been "filed at the Office of the Postal Service" when the form has in fact been in the possession of and handled by at least one, and probably several, employees of the Postal Service. I cannot concur in allowing this self-effacing position of the Postal Service to defeat the plaintiff's ability to have her claim even considered.
 
 
 54
 I would hold that the Postal Service received Willis's claim when it was placed in the mail on June 8, 1990. Therefore, the claim was received by the Postal Service within the limitations period. While claims against other agencies cannot be deemed "presented" simply by being placed in the control of the Postal Service, claims against the Postal Service itself are technically presented to and received by the Service when the document is given over to the control of the Service or, in other words, placed in the mail. This is made especially clear by the language of the § 912.5(a), which states that the claim is deemed presented when the Postal Service receives the appropriate document. The regulation does not specify that a particular agent or office of the Postal Service must receive the claim for it to be sufficiently "presented." It does not require that the Postal Service have actual notice of the claim (although in this case it had such notice long before the end of the limitations period). Further, it does not expressly state that the required documents must be actually received by the person responsible for tort claims at the local or regional branch of the Postal Service in order for the presentment requirement to be satisfied.
 
 
 55
 Instead, the regulation simply states the broad requirement that the Postal Service must receive the documents. Since the term "Postal Service" is not defined or modified further by the regulation, we must take that term to mean the "Postal Service" in any and all of its manifestations. It is logical to assume that if you present the appropriate document to a clerk at the window in your local Post Office, then you have fulfilled the requirements of the regulation and, therefore, of the Federal Tort Claims Act with respect to the Postal Service. In addition, if you place the letter in a mailbox, it is now in the control of the Postal Service and the Postal Service has, therefore, received the letter. There is no reason to distinguish between these two examples, given the language of the Postal Service regulation.
 
 
 56
 In this case, the Postal Service gave additional instructions to Willis's attorney concerning the precise person to whom the documentation should be sent. This advice, however, cannot be given the status of a regulatory requirement. Officers of the Postal Service can certainly give particular instructions to potential claimants regarding where, in particular, their claims must be sent. However, these instructions, given primarily for the convenience of the Postal Service itself, do not expand the statutory requirement of presentation. While a claiming party may agree to cooperate with particular requests that serve the internal organizational needs of the Postal Service, the party cannot be punished for doing so, especially in light of the broad terms established in the regulation for satisfying the presentment requirement.
 
 
 57
 Thus, given the plain language of the regulatory definition of "presentment" with regard to the Postal Service, it is clear that Willis satisfied that requirement when her attorney placed the proper documents in the mail and, therefore, in the control of the Postal Service. In cases involving the Postal Service, where the evidence establishes that the proper documents were placed in the mail before the limitations period has run, the statute of limitations is satisfied. The Postal Service is unique in this regard because, once the letter is placed in the mail, it can be said that the Postal Service has received the document. The documents are now within the internal delivery system and control of the Postal Service. There is no reason, and the majority suggests none beyond its conclusory assertion with regard to this matter, why the broad and undefined term "receives" in the Postal Service's own regulation should be taken to mean receipt by a specific person charged with processing these claims.
 
 
 58
 It is unclear, especially given the purposes of statutes of limitations in general and the limitations period of the Federal Tort Claims Act in particular, why the court adopts a restrictive definition of the term "received" in the Postal Service regulation in order to deny consideration of Willis's claim. The general purpose of statutes of limitations was summarized long ago by the Supreme Court:
 
 
 59
 Statutes of limitation, like the equitable doctrine of laches, in their conclusive effects are designed to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared. The theory is that even if one has a just claim it is unjust not to put the adversary on notice to defend with the period of limitation and that the right to be free of stale claims in time comes to prevail over the right to prosecute them.
 
 
 60
 Order of Railroad Telegraphers v. Railway Express Agency, Inc., 321 U.S. 342, 348-49 (1944). In addition, we discussed the purpose of the administrative tort claims procedure in Executive Jet Aviation, Inc. v. United States, 507 F.2d 508, 515 (1974):
 
 
 61
 The present mandatory administrative claims procedure was added to the Federal Tort Claims Act in 1966. Act of July 18, 1966, Pub.L. No. 89-506, 80 Stat. 306. The purpose of the amendment was not to make recovery from the Government technically more difficult. Rather, the purpose was "to ease court congestion and to avoid unnecessary litigation, while making it possible for the Government to expedite the fair settlement of tort claims asserted against the United States." S.Rep. No. 1327, 89th Cong., 2d Sess. (1966), U.S. Code Cong. & Admin. News, p. 2516.
 
 
 62
 Neither the statute of limitations adopted as part of the FTCA in particular, nor statutes of limitations in general, are intended to make recovery more difficult or to prevent certain claims.
 
 
 63
 In general, limitations periods are intended to promote justice by preventing the filing of surprise stale claims. In the context of the Federal Tort Claims Act, the limitations period is intended to promote settlements in order to avoid unnecessary litigation. None of these rationales supports the court's unsupported restrictive interpretation of the statute to defeat Willis's claim. The FTCA does not force this court to deny Willis's claim. In fact, a proper interpretation of the sweeping language of the Postal Service's regulation allows Willis's claim. This court should not be in the business of shutting the doors to the federal courts whenever a case can be made for doing so based on a restrictive and technical interpretation of a statute of limitations.
 
 
 64
 In Executive Jet, this Circuit went so far as to hold that the "technical procedures of the Tort Claims Act must give way to the clear demands of justice." Executive Jet Aviation, 507 F.2d at 517 n. 4. We need not go as far in this case. We can and must give effect to the plain language of the applicable regulation and, therefore, allow Willis to present her claim to a federal court. In doing so, we can satisfy both the technical procedures of the Federal Tort Claims Act and the clear demands of justice. This result would also be consistent with the purposes of the statute of limitations.
 
 
 65
 The court's opinion, on the other hand, misinterprets the relevant regulation, imposes an overly-restrictive and unsupported "presentment requirement," and thereby prevents Willis from even presenting her case. In doing so the court frustrates the purposes of the Federal Tort Claims Act and of the claims procedures that are a part of that Act, and unjustly denies Willis her day in court.
 
 
 66
 There are good reasons for clear rules and strict statutes of limitations. I have been one to insist that they be followed when they have clearly been transgressed. But such rules do carry the price of barring claims that otherwise may be meritorious. There is no particular viture, and indeed much vice, in interpreting the conditions for the application of such rules in an unduly rigid way. When there is a perfectly plausible interpretation that allows a claim to proceed, I think we should use that interpretation. This is doubly true when the defendant agency is the one that has it within its power to make the filing timely or not, and is an agency that holds itself out to the public as being in the business of receiving and delivering messages.
 
 
 67
 I respectfully dissent from today's holding, which simply emphasizes that senders deal with the Postal Service at their peril. The information thus emphasized may well cost the Postal Service far more than consideration of this claim would.
 
 
 
 *
 Honorable Paul H. Roney, United States Court of Appeals for the Eleventh Circuit, sitting by designation
 
 
 [1]
 Section 409(c) provides: "The provisions of chapter 171 and all other provisions of title 28 relating to tort claims shall apply to tort claims arising out of activities of the Postal Service."