**FEDERAL EXPRESS CORPORATION,**
Plaintiff,

v.

**UNITED STATES POSTAL
SERVICE, Defendant.**

No. 96–3151–D/A.

United States District Court,
W.D. Tennessee,
Western Division.

March 21, 1997.

Dwayne S. Byrd, R. Larry Brown, Lester A. Bishop, Jr., Federal Exp. Corp. Legal Dept., Memphis, TN, for plaintiff.

Joe A. Dycus, U.S. Attorney's Office, for defendant.

### ORDER DENYING DEFENDANT'S MOTION TO DISMISS

DONALD, District Judge.

Defendant, an independent establishment of the federal government, has challenged this court's subject matter jurisdiction over Plaintiff's cause of action brought pursuant to the Lanham Act, 15 U.S.C. §§ 1051–1127 (1994). Jurisdiction is premised on 15 U.S.C. § 1121(a) and 39 U.S.C. § 401(1), a provisions of the Postal Reorganization Act ("PRA").

### I. BACKGROUND

 Under the PRA, the United States Postal Service ("USPS") enjoys a hybrid sta-

tus. It is both an "independent establishment of the executive branch," 39 U.S.C. § 201, retaining certain attributes of a federal agency, and a quasi-private enterprise that was "'launched ... into the commercial world'" by the 1971 law that created it. *Franchise Tax Bd. of Cal. v. United States,* 467 U.S. 512, 520, 104 S.Ct. 2549, 2554, 81 L.Ed.2d 446 (1984) (quoting *FHA v. Burr,* 309 U.S. 242, 245, 60 S.Ct. 488, 490, 84 L.Ed. 724 (1940)). In accordance with its desire that USPS be operated more like a business than its predecessor, Congress authorized the Postal Service to "sue and be sued in its official name." 39 U.S.C. § 401(1). This language operates to waive the government's traditional sovereign immunity to suit. *Loeffler v. Frank,* 486 U.S. 549, 556, 108 S.Ct. 1965, 1969–70, 100 L.Ed.2d 549 (1988). This waiver "must be liberally construed and ... the Postal Service's liability must be presumed to be the same as that of any other business." *Id.*

■ The PRA also incorporated the provisions of the Federal Torts Claim Act ("FTCA"), a separate waiver of immunity for certain torts committed by federal employees. 28 U.S.C. § 1346(b) & §§ 2671–80. Specifically, the PRA states that "[t]he provisions of chapter 171 and all other provisions of title 28 relating to tort claims shall apply to tort claims arising out of activities of the Postal Service." 39 U.S.C. § 409(c). This section refers to the FTCA, which prescribes the exclusive means by which a plaintiff may allege a tort claim against the federal government. Although generally the FTCA operates to waive immunity, Defendant argues that in the Postal Service's case, § 409(c) restricts the otherwise broad waiver of sovereign immunity embodied in the sue-and-be-sued clause and bars Plaintiff's Lanham Act claim. "Although the Post Office may generally sue and be sued, its capacity to be sued in tort is limited by the requirements of the FTCA." *Willis v. United States,* No. 91–4111, 1992 WL 180181, at *2 (6th Cir. July 29, 1992).

## II. FEDERAL TORT CLAIMS ACT

■ The United States cannot be sued without its consent, and consent is a prereq-uisite for jurisdiction. *United States v. Mitchell,* 463 U.S. 206, 212, 103 S.Ct. 2961, 2965, 77 L.Ed.2d 580 (1983). Defendant's argument that this court lacks jurisdiction over Plaintiff's Lanham Act claim proceeds along the following path of logic:

1. tort claims against a federal governmental entity like USPS must be brought under the Federal Tort Claims Act;

2. the FTCA's remedial scheme encompasses any action that "sounds in tort";

3. the Lanham Act is derived from the common law tort of unfair competition, therefore it "sounds in tort";

4. the FTCA provides for a cause of action against the federal government—that is, it waives sovereign immunity—*only* in accordance with the "law of the place" where the tortious act or omission occurred;

5. the "law of the place" has been construed to refer exclusively to *state* law;

6. because the Lanham Act is not a state law, the FTCA does not waive immunity for Lanham Act claims brought against USPS.

(Def.'s Mem. Supp. Mot. to Dismiss at 4–6.)

In response, Plaintiff argues that Lanham Act claims are not "cognizable" under the FTCA because that statute applies only to state law tort claims, not federal laws or constitutional torts, and that pursuant to the broad waiver of immunity under the PRA's "sue-and-be-sued" clause, this court has jurisdiction to consider the Lanham Act suit.

### A. *FDIC v. Meyer*

Defendant claims that "[a]ll federal courts which have addressed claims sounding in tort raised against the Postal Service have concluded that [§ 409] explicitly limits the ability of plaintiffs to sue the Postal Service on such claims." (*Id.* at 3.) Most of the rulings the Postal Service cites on this point, however, were decided prior to the Supreme Court's ruling in *FDIC v. Meyer,* 510 U.S. 471, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994), in which the Court unanimously held that not all claims "sounding in tort" were cognizable under 28 U.S.C. § 1346(b). *Id.* at 479–80, 114 S.Ct. at 1002–03.

In *Meyer*, a former savings and loan official fired by the Federal Savings and Loan Insurance Corporation ("FSLIC") brought a *Bivens* action against the federal agency, claiming that it terminated him in violation of his due process rights. The opinion, written by Justice Thomas, rejected the claim by FSLIC's statutory successor, the Federal Deposit Insurance Corporation ("FDIC"), that the FTCA barred the lawsuit based on the theory that a constitutional tort was at once cognizable under § 1346(b) and precluded by it because it did not arise out of state law. The Court noted that, while the FTCA is the exclusive remedy for claims judged "cognizable" under the statute, merely labeling a cause of action as "tort" does not bring it automatically within the statute:

> [Section] 1346(b) describes the scope of jurisdiction by reference to claims for which the United States has waived its immunity and rendered itself liable. FDIC seeks to uncouple the scope of jurisdiction under § 1346(b) from the scope of the waiver of sovereign immunity under § 1346(b). Under its interpretation, the jurisdictional grant would be broad (covering all claims sounding in tort), but the waiver of sovereign immunity would be narrow (covering only those claims for which a private person would be held liable under state law). *There simply is no basis in the statutory language for the parsing FDIC suggests.*

*Id.* at 479, 114 S.Ct. at 1002 (emphasis added).

Defendant responds that *Meyer* has no bearing on FedEx's lawsuit because, although the FSLIC's organic statute contained a "sue and be sued" clause nearly identical to the one in the PRA, the law creating the FSLIC did not incorporate the FTCA. This difference takes the analysis out of *Meyer*'s orbit, according to Defendant. As explained in USPS' reply brief, § 409(c) of the PRA "makes the FTCA and its attendant limitations on suit applicable to *all* torts against the Postal Service, regardless of whether the torts are premised on common law or federal statutory law." (Def.'s Reply Br. at 4.) Indeed, Defendant's gloss on *Meyer* is that a federal entity "subject to a 'sue and

be sued' clause *that is not limited by a provision similar to 409(c)* may otherwise be subject to suit for certain torts that are not cognizable under the FTCA." (Def.'s Mem. at 5) (emphasis added). Defendant's leap of logic is untenable; nothing in *Meyer* supports such an expansive reading of the FTCA. Indeed, the plain meaning of § 409 and the legislative history surrounding the passage of the PRA supports the contrary conclusion.

### B. Statutory Construction

In responding to Plaintiff's argument that § 409(c) is redundant because the FTCA, by its own language, already applies to all federal agencies, (*see* Pl.'s Mem. Opp'n Mot. to Dismiss at 5 n. 1), Defendant argues that a statute must be construed to give effect to all its provisions. The court agrees with this doctrine of statutory construction but does not believe it compels the conclusion that Congress created a "super FTCA" when it passed the Postal Reorganization Act.

To begin with, this principle does not override the plain language of § 409, which states: "The provisions of [FTCA] relating to tort claims shall apply to tort claims arising out of activities of the Postal Service." The statute does not say the FTCA shall govern "all causes of action that are based on common law torts" or "tort claims, including those based on federal statutes"—merely "tort claims." *See Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 756, 95 S.Ct. 1917, 1935, 44 L.Ed.2d 539 (1975) (Powell, J., concurring) ("[t]he starting point in every case involving construction of a statute is the language itself"); *Aaron v. SEC*, 446 U.S. 680, 697, 100 S.Ct. 1945, 1956, 64 L.Ed.2d 611 (1980) (absent a "very clear" legislative intent, the plain meaning will prevail). As the Supreme Court has stated, "courts must presume that a legislature says in a statute what it means and means in a statute what it says there." *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253–54, 112 S.Ct. 1146, 1149–50, 117 L.Ed.2d 391 (1992).

Further, § 409(c) undoubtedly has a definite purpose, although not the one the Postal Service assigns to it. In must be remem-

bered that the Postal Reorganization Act worked a seismic change in the relationship between the U.S. government and the federal entity that delivers our daily mail. "Congress intended to establish an independent, self-sufficient Postal Service that differed both *de jure* and *de facto* from its predecessor, the United States Post Office." *United Va. Bank/Nat'l v. Eaves,* 416 F.Supp. 518, 521 (E.D.Va.1976). However, Congress did not strip USPS of all attributes of a federal agency. *Young v. United States Postal Serv.,* 698 F.Supp. 1139, 1141 (S.D.N.Y.1988); *see also* H.R.Rep. No. 1104 (1970), *reprinted in* 1970 U.S.C.C.A.N. 3649, 3668 (the Postal Service remains "first, last, and always" a public service). To this end, § 409 affirmed that, despite its new independence, USPS retained its status as a federal entity and that the FTCA remained the exclusive route by which to bring a tort action against it.

In fact, the PRA specifically lists other statutes with which USPS must continue to comply, 39 U.S.C. §§ 410, including 42 U.S.C. §§ 4151–56 (design of government buildings to accommodate the disabled); 20 U.S.C. § 107 (vending facilities operated by the blind); 29 U.S.C. § 668 (Occupation Safety and Health Act); 40 U.S.C. §§ 270a–f (Miller Act). Does Defendant argue that the "incorporation" of these statutes into the PRA somehow resulted in more muscular versions of these laws? After *Meyer,* the more natural interpretation is that incorporation merely limited the general waiver of immunity under the sue-and-be-sued clause without extending § 1346(b) to cover all claims "sounding in tort." *See Johnson v. Runyon,* No. 95–3083, 1996 WL 405218, at *1 (4th Cir. July 19, 1996) (federal constitutional torts "are not included within 'the law of the place,' since local law and federal law by definition and terminology are different"); Richard A. Givens, *Manual of Federal Practice* § 1.131 (4th ed.1991) (describing the FTCA as a "simple negligence statute which incorporates the state standard of negligence").

▆▆ Section 409 also serves as a procedural guidepost for would-be plaintiffs. There is a difference between suing the "United States" under the FTCA and suing a federal agency or its governing board directly under a sue-and-be-sued clause. *ABI Inv. Group v. FDIC,* 860 F.Supp. 911, 918 (D.N.H.1994); Givens, *Manual of Federal Practice, supra,* § 1.147. Failure to name the correct party can result in dismissal for lack of jurisdiction. *ABI Inv. Group,* 860 F.Supp. at 918. Also, recovery in a lawsuit brought pursuant to a sue-and-be-sued clause must be from funds in possession and control of the agency. Givens, *Manual of Federal Practice, supra,* § 1.138. If recovery is to come from general revenue, the suit must be brought against the "United States" and may be barred by sovereign immunity or require a congressional appropriation. *Id.* Additionally, unlike a suit under a sue-and-be-sued clause, the filing of a timely administrative claim with the appropriate agency is a jurisdictional prerequisite to bringing a lawsuit under the FTCA, 28 U.S.C. § 2675(a), which also details other procedures that do not apply to lawsuits brought under a sue-and-be-sued provision. *See, e.g.,* 28 U.S.C. § 2672 (prescribing standards for settlement and conditions for acceptance): § 2677 (authorizing the Attorney General to compromise claims); § 2678 (limiting attorney fees that FTCA plaintiffs may recover). The logical conclusion is that "Congress merely intended that any state law tort claims against USPS ... would be governed by the procedural mechanisms of the FTCA." (Pl.'s Mem. at 6.)

## C. Legislative History

The legislative history does not support Defendant's argument. As noted by one court, the history of the Postal Reorganization Act reflects a widely-acknowledged need in Congress for "sweeping reforms" in postal policies and operations:

> The new legislation aimed to insulate the Service from direct political pressure, to remedy chronic inefficiencies in service, to create a framework for satisfactory labor-management relations, and to remove numerous obstacles to the streamlined operation of the nation's postal system. The overarching goal was to create a Postal Service capable of conducting its affairs "on a business like basis, while retaining

the public service character of the Nation's mail system." Congress thus empowered the new Service to sue and be sued, to adopt rules and regulations, to enter into and perform contracts, to keep its own system of accounts, to acquire and sell property ... and to have all other powers incidental, necessary or appropriate to the carrying on of its functions or powers. *Young,* 698 F.Supp. at 1141. *Meyer* is clearly animated by the spirit of *FHA v. Burr,* 309 U.S. 242, 60 S.Ct. 488, 84 L.Ed. 724 (1940), and that case's command that " 'when Congress launche[s] a governmental agency into the commercial world and endow[s] it with authority to 'sue and be sued,' *that agency is not less amendable to judicial process than a private enterprise* under like circumstances would be.' " *Meyer,* 510 U.S. at 481, 114 S.Ct. at 1003 (quoting *Burr,* 309 U.S. at 245, 60 S.Ct. at 490). The Court adopted *Burr* 's holding that sue-and-be-sued clauses are to be read narrowly only if it is "clearly shown"

> [1] that certain types of suits are not consistent with the statutory or constitutional scheme, [2] that an implied restriction of the general authority is necessary to avoid grave interference with the performance of a governmental function, or [3] that for other reasons it was plainly the purpose of Congress to use the "sue and be sued" clause in a narrow sense.

*Burr,* 309 U.S. at 245, 60 S.Ct. at 490. As explained in this order, Defendant has failed to make a clear showing that a Lanham Act suit against USPS is inconsistent with the PRA or that Congress intended the FTCA's limitation on the otherwise broad waiver of immunity under the sue-and-be-sued provision to bar federal statutory or constitutional claims with their roots in common law torts.

### D. Focus on State Law

■ *Meyer* altered the landscape of federal agency amenability to suit; government agencies generally approachable by private litigants pursuant to sue-and-be-sued clauses

may not rely on the FTCA to shield them from any non-state civil action that might be branded as "sounding in tort." *See, e.g., Peak v. Small Bus. Admin.,* 660 F.2d 375, 377 (8th Cir.1981) ("The FTCA is the exclusive remedy for actions sounding in tort....")[1]. As just one example, *Meyer* clearly overruled the Ninth Circuit's holding in *Pereira v. United States Postal Serv.,* 964 F.2d 873 (9th Cir.1992), that "federal district courts have no jurisdiction over the United States where claims allege constitutional torts." *Id.* at 876. Justice Thomas' opinion clearly stated that John Meyer's *Bivens* action did not come under the aegis of the FTCA, despite the federal agency's argument that all claims "sounding in tort," including constitutional torts, should be cognizable under § 1346(b). *Meyer,* 510 U.S. at 479–80, 114 S.Ct. at 1002–03. It follows therefore that the Lanham Act is not "cognizable" under § 1346(b) merely because it is derived from the state common law tort of unfair competition. In the wake of *Meyer,* cases finding that analogous federal statutes "sound in tort" have little relevancy in determining whether this court has jurisdiction over Plaintiff's claim.

Defendant also cites to several cases that stand for the general rule that courts may look to comparable state torts when interpreting the scope of liability under the Lanham Act. In *American Tel. & Tel. Co. v. Winback and Conserve Program, Inc.,* 42 F.3d 1421 (3d Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1838, 131 L.Ed.2d 757 (1995), for example, the appeals court held that a principal is liable for trademark infringement by an agent acting within his or her apparent or actual authority. The Third Circuit based its ruling on an analogy between the Lanham Act and the common law tort of unfair competition, noting that in construing the federal statute, "courts routinely have recognized the propriety of examining basic tort liability concepts to determine the *scope of liability.*" *Id.* at 1433 (emphasis

---

1. The Eighth Circuit tightened its phrasing in an opinion five years later, characterizing *Peak* as holding that "the FTCA is the exclusive remedy in tort actions against the Government," an irrefutably correct statement of the law. *Loeffler v. Tisch,* 806 F.2d 817, 820 (8th Cir.1986), *rev'd on other grounds sub nom. Loeffler v. Frank,* 486 U.S. 549, 108 S.Ct. 1965, 100 L.Ed.2d 549 (1988).

added). Similarly, the Seventh Circuit applied the doctrine of joint tortfeasor liability to unfair competition and trademark infringement claims brought under the Lanham Act. *David Berg and Co. v. Gatto Internat'l Trading Co.*, 884 F.2d 306, 311 (7th Cir.1989); *see generally Hard Rock Cafe Licensing Corp. v. Concession Servs., Inc.*, 955 F.2d 1143, 1148 (7th Cir.1992) (approving "turn[ing] to the common law to guide our inquiry into the appropriate boundaries of [Lanham Act] liability").

These cases and others cited by Defendant do not support a finding that the FTCA encompasses Lanham Act claims brought against the federal government. The FTCA permits a suit against the federal government where "the negligent or wrongful act or omission" of a government employee causes injury "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b). As Defendant stated, the courts consistently have held that the "law of the place" refers to state law exclusively. *Carlson v. Green*, 446 U.S. 14, 23, 100 S.Ct. 1468, 1474, 64 L.Ed.2d 15 (1980). Because federal law, not state law, provides the source of liability for a claim alleging a violation of the Lanham Act, the FTCA does not constitute FedEx's exclusive remedy. *See Meyer*, 510 U.S. at 478, 114 S.Ct. at 1001–02. In this context, the Sixth Circuit's remark that the FTCA's limited waiver of immunity "is determined by analogizing the United States to a private actor in a similar situation under the appropriate state law," *Young v. United States*, 71 F.3d 1238, 1244 (6th Cir.1995),[2] may be read to support Plaintiff's argument. *Cf. Chen v. United States*, 854 F.2d 622, 626 (2d Cir.

1988) (noting that the law of the place requirement "is not satisfied by direct violations of the Federal Constitution or of federal statutes or regulations standing alone").

Defendant cites another case that supports Plaintiff view, *U.S. Gold & Silver Inv., Inc. v. United States ex rel. Director, U.S. Mint*, 885 F.2d 620 (9th Cir.1989), *cert. denied*, 497 U.S. 1004, 110 S.Ct. 3239, 111 L.Ed.2d 750 (1990), in which the Ninth Circuit held that Lanham Act claims are not "cognizable" under the FTCA:

> [A]s the Supreme Court has stated, "an action under FTCA exists only if the State in which the alleged misconduct occurred would permit a cause of action for that misconduct to go forward." ... The sole basis for plaintiff's claim alleged in this complaint, however, is violation of a federal statute, the Lanham Act. The FTCA is not intended to encompass such a claim.

*Id.* at 621 (quoting *Carlson*, 446 U.S. at 23, 100 S.Ct. at 1474. In other words, a finding that a claim is not cognizable within the meaning of § 1346 places it *outside* the FTCA's administrative regimen. *Meyer*, 510 U.S. at 478, 114 S.Ct. at 1001–02; *Dorking Genetics v. United States*, 76 F.3d 1261, 1263 (2d Cir.1996) (a claim that fails to state all six elements of § 1346(b) may be "saved by some other waiver of sovereign immunity," such as a sue-and-be-sued clause).[3]

The government concedes this point, but tries to turn it to USPS' advantage: "Because the Lanham Act is not state law, the FTCA does not include a waiver of immunity for Lanham Act claims." (Def.'s Mem. at 6.) This is the line of reasoning the Supreme Court rejected in *Meyer*. Like the FSLIC, Defendant here "seeks to uncouple the scope of jurisdiction under § 1346(b) from the scope of the waiver of sovereign immunity

---

**2.** Defendant's citation of *Willis v. United States*, No. 91–4111, 1992 WL 180181 (6th Cir. July 29, 1992), is unhelpful. In that case, the plaintiff's claim for negligence against the Postal Service was properly filed under the FTCA, but the lower court dismissed the case for lack of jurisdiction because the plaintiff had failed to file a timely claim with USPS as required under 28 U.S.C. § 2401(b). On appeal, the Sixth Circuit held that equitable estoppel does not apply to the filing requirement and upheld the lower court's dismissal. *Id.* at *2–3.

**3.** In *U.S. Gold*, the plaintiff brought a Lanham Act case under the FTCA, as Defendant argues is proper. After finding the claim was not properly before it, the Ninth Circuit declined to say whether the United States could be sued directly under the Lanham Act, which is the next major question the court must answer. *See* discussion *infra* Part IV. The Ninth Circuit refused to allow the plaintiff to amend its pleadings to state a Lanham Act claim directly because the appeals court said it would not have succeeded on the merits. *U.S. Gold*, 885 F.2d at 621.

under § 1346(b)." *Meyer*, 510 U.S. at 479, 114 S.Ct. at 1002. There is no basis for this interpretation, regardless of the fact that the FTCA was not incorporated into FSLIC's organic statute, the distinction on which Defendant seizes to claim *Meyer* has no effect on its jurisdictional argument. As explained previously, neither the plain reading of the statute nor legislative history supports Defendant's expansive reading of § 1346.

### E. *United States v. Quick Internat'l Courier*

The court's holding today conflicts with at least one other federal court. In an unpublished opinion, a federal judge in Minnesota granted the government's motion for summary judgment based on the same jurisdictional argument USPS now presents. *United States v. Quick Internat'l Courier, Inc.*, Civ. No. 3–95–381, at 13, —— F.Supp. ——, —— [1996 WL 901073] (D.Minn. July 16, 1996). The court apparently agreed with the government's reasoning when it stated that the PRA's incorporation of the FTCA "*expressly* limits the waiver of sovereign immunity" under the sue-and-be-sued clause. *Id.* at n. 8. However, this does not explain how the FTCA's *limitation* on § 401(1) operates to swallow whole Plaintiff's Lanham Act claim, especially in light of the clear Supreme Court mandate that courts are to construe sue-and-be-sued clauses broadly. *Franchise Tax Bd.*, 467 U.S. at 517–18, 104 S.Ct. at 2552–53; *Burr*, 309 U.S. at 243–44, 60 S.Ct. at 490. Indeed, the presumption cuts in Plaintiff's favor: "[W]hen Congress intends the waiver of sovereign immunity in a new cause of action directed against federal entities to be exclusive,—in effect, to limit the force of 'sue-and-be-sued' clauses—it has said so expressly." *Loeffler*, 486 U.S. at 561, 108 S.Ct. at 1973.

This court does agree with the Minnesota court that "Congress has clearly and expressly demonstrated its intent to limit the effect of the PRA's 'sue-and-be-sued' clause," *Quick*, at 13 n. 8, but does not believe § 1346 attained black hole status as a result of incorporation. *Quick* adopted the federal government's argument that *Meyer* is distinguishable because its organic statute did not incorporate the FTCA's limitations on the broad sovereign immunity. However, incorporation of the FTCA did not drive Justice Thomas' reasoning. The words "incorporate" and "incorporation" do not appear in *Meyer*, and nothing in the opinion supports *Quick*'s conclusion that the Supreme Court "declined to incorporate the FTCA's limitation because Congress had not demonstrated a clear intent that the FTCA's limitation should be included to narrow the FSLIC's waiver." *Id.* To the contrary, the Court specifically recognized that "Congress, through the FTCA, limited the scope of sue-and-be-sued waivers such as that contained in FSLIC's organic statute," but still held that the FTCA did not operate to bar the plaintiffs *Bivens* action. *Meyer*, 510 U.S. at 476, 114 S.Ct. at 1000; *see also FDIC v. F.S.S.S.*, 829 F.Supp. 317, 321 (D.Alaska 1993) (the FTCA "waives sovereign immunity for tort claims against the United States and is generally recognized as applicable to claims against FDIC"). Any legal distinction between the present case and *Meyer* based on the incorporation of the Federal Tort Claims Act is chimerical.

### III. SECTION 410

 USPS also argues that Plaintiff's claim is precluded by 39 U.S.C. § 410, which limits the applicability of federal laws "dealing with public or Federal contracts, property, works, officers, employees, budgets, or funds...." 39 U.S.C. § 410(a). This provision does not by its terms address the immunity of the Postal Service from a *lawsuit*, nor does it limit the broad waiver of sovereign immunity embodied in the sue-and-be-sued clause. *Miller v. Gould*, No. 89–C–5676, 1990 WL 70543, at *2 (N.D.Ill. May 19, 1990). This court finds no "clear and unequivocal" limitation on § 401(1) that would place a Lanham Act claim within § 410. *See Biase v. Kaplan*, 852 F.Supp. 268, 280 n. 8 (D.N.J. 1994).

Moreover, § 410(b) is not an exhaustive list of every federal law that bears on the Postal Service. *Miller*, 1990 WL 70543, at *2. Congress designed § 410 to exempt the Postal Service from outmoded, 'managerial' statutes and regulations that could interfere with "modern management and business

practices." *Chelsea Neighborhood Ass'ns v. United States Postal Serv.,* 516 F.2d 378, 384 (2d Cir.1975) (quoting H.R. No. 91–1104, *reprinted in* 1970 U.S.C.C.A.N. 3649, 3650). The Lanham Act is not such a law. Under the liberal construction that must be accorded the waiver of immunity clause, § 410 cannot act as a bar to Plaintiff's lawsuit. *See Miller,* 1990 WL 70543, at *2 (allowing USPS to be sued under the civil provisions of RICO based on the sue-and-be-sued clause).

## IV. MAY USPS BE SUED DIRECTLY UNDER THE LANHAM ACT?

■ FedEx alleges that USPS' comparative advertisements violate Section 43 of the Lanham Act, 15 U.S.C. § 1125(a) (1994), which prohibits "any person" from making false or misleading representations of fact that would cause confusion as to the source, sponsorship, approval, association or origin of goods or services in the marketplace. "Any person" includes "juristic" entities, including "a firm, corporation, union, association, or other organization capable of suing and being sued in a court of law." 15 U.S.C. § 1127. USPS makes two arguments that the federal government should not be included within the definition of "person," one based on a statutory construction principle and the other based on case law requiring an express and unequivocal waiver of sovereign immunity for a statute to provide a cause of action against the federal government. These two arguments ultimately are linked and will be dealt with together. FedEx contends that the PRA's sue-and-be-sued clause does constitute an express waiver and that the intent of the law that created the modem postal system was that it operate as much as possible as a private entity. "Just as private enterprises and businesses are 'persons' within the meaning of the Lanham Act, the USPS is also," FedEx argues.

Defendant claims a recent Eighth Circuit ruling found that "[f]ederal entities are not subject to the Lanham Act." (Def.'s Mem. at 9 n. 6). This is incorrect, although the Eighth Circuit did hold that the Federal Emergency Management Agency ("FEMA") was not amenable to suit under the Lanham Act. *Preferred Risk Mut. Ins. Co. v. United States,* 86 F.3d 789 (8th Cir.1996), *cert. denied* —— U.S. ——, 117 S.Ct. 1245, 137 L.Ed.2d 327 (1997). However, the appeals court did not say that *all* federal agencies were similarly immune and in fact acknowledged that such a cause of action could lie given "an express and unequivocal waiver of its sovereign immunity." *Id.* at 795. The sue-and-be-sued clause is such an explicit waiver. *United States v. Nordic Village, Inc.,* 503 U.S. 30, 34, 112 S.Ct. 1011, 1014–15, 117 L.Ed.2d 181 (1992). However, FEMA's governing statute does not include such a provision.

The Eighth Circuit's reliance on statutory construction is similarly inapplicable to the case at hand. The appeals court analyzed § 1127 using the principle of *ejusdem generis,* which dictates that a general term following a list of specific items must be interpreted as referring to subjects akin to those specifically named. Given that all of the particular entities listed in the Lanham Act's definition of "person" are private entities, the Eighth Circuit stated that "consideration of this rule of statutory construction would counsel against an interpretation that includes the federal government." *Preferred Risk,* 86 F.3d at 794. However, the Postal Service's sue-and-be-sued provision is deemed to waive immunity for a vast array of laws precisely because Congress intended USPS to be treated as much like a private commercial enterprise as possible. *Loeffler,* 486 U.S. at 556, 108 S.Ct. at 1969–70; *Department of the Army v. Federal Labor Relations Auth.,* 56 F.3d 273, 278 (D.C.Cir. 1995); *see also Huff v. Government Nat'l Mortgage Ass'n,* No. 94–C–00 180, 1995 WL 31563, at *6 (N.D.Ill. Jan.26, 1995) (refusing to find a sue-and-be-sued clause to waive liability for a § 1983 lawsuit because "the *Meyer* rationale clearly confines the waiver of immunity to the extent that a private enterprise might be held liable").

The Lanham Act is not the true source of jurisdictional authority in the case at hand, the PRA is. Similarly, the Supreme Court in *Loeffler* explained that § 401(1), not Title VII, was the source of the express and unambiguous waiver of immunity that cleared the way for the plaintiff to collect the remedy he

sought. *Id.* at 554–58, 108 S.Ct. at 1968–71. Furthermore, implied exceptions to this waiver "cannot be lightly assumed." *Id.* at 554, 108 S.Ct. at 1969. Applying the statutory construction maxim Defendant urges does not without more show clearly that Congress intended to limit the waiver of immunity granted by the sue-and-be-sued clause in the case of Lanham Act suits. *See Burr,* 309 U.S. at 245, 60 S.Ct. at 490.

Also unpersuasive is Defendant's argument regarding the 1992 amendment of the Lanham Act to include states, state instrumentalities and state officers and employees within the definition of "person." Pub.L. No. 102–542, § 3(d), 106 Stat. 3568 (amending 15 U.S.C. § 1127 (1994)). The Eighth Circuit correctly applied the statutory construction rule of *Department of Energy v. Ohio,* 503 U.S. 607, 112 S.Ct. 1627, 118 L.Ed.2d 255 (1992), but was not confronted with an unambiguous waiver of sovereign immunity in the form of a sue-and-be-sued clause. *See Preferred Risk,* 86 F.3d at 795. *Department of Energy* gave effect to the language of a section of the Clean Water Act in the absence of a "clear and unequivocal waiver." *Department of Energy,* 503 U.S. at 619, 112 S.Ct. at 1635. In addition, that ruling credited the fact that the "United States" was missing from a long list of *governmental* entities; the clear command of *Loeffler* is that the Postal Service's liability under the sue-and-be-sued provision "must be presumed to be the same as that of any other business." *Loeffler,* 486 U.S. at 556, 108 S.Ct. at 1970. Hence, the fact that Congress amended the Lanham Act to include its first governmental entity does not necessarily militate against the inclusion of a quasi-private entity like USPS in the "other organization" catch-all. Accordingly, this court finds that the Postal Service may be sued directly under the Lanham Act.

## V. CONCLUSION

By placing its no-holds-barred advertisements on national television, USPS embarked on an excursion into the commercial world unique to a federal entity. There can be little doubt, based on the history of the statute, that Congress intended the Postal Service to operate as much as possible as a private business, and the comparison ads that are the subject of FedEx's lawsuit are the direct result of taking USPS off-line in terms of bureaucratic oversight.[4] Yet, while making use of that flexibility to aggress against its competitors on the nation's airwaves, USPS seeks to don the cloak of sovereignty when its actions in the open market attract a lawsuit. This court does not believe that Congress, in freeing the Postmaster General from his own house, intended to create a federal corporation immunized from the very law that protects consumers and competitors from deceptive commercial practices. Whether USPS has engaged in false advertising is a question for another day, but FedEx's lawsuit may go forward.

## VI. ORDER

After a thorough review of the applicable statutes and case law, the court **DENIES** Defendant's motion to dismiss based on jurisdictional grounds.

---

4. The Postal Service has a greater degree of autonomy in managing its books than that enjoyed by ordinary executive agencies. 39 U.S.C. § 2002; *Milner v. Bolger,* 546 F.Supp. 375, 379 (E.D.Cal.1982) (USPS funds are treated "as something quite distinct from the capital of the United States"). The Postal Service has exclusive control over its day-to-day financial operations. 39 U.S.C. § 2003. Also, it may sell its own obligations without the prior consent of the United States Treasury, 39 U.S.C. §§ 2005–06, and it has the authority to procure the property and services it needs to conduct its operations independently of the executive agencies, 39 U.S.C. § 410(a); 39 C.F.R. 601 (1995).