**STATE AUTOMOBILE MUTUAL INSURANCE COMPANY,**
Appellant,

v.

**EMPIRE FIRE & MARINE INSURANCE COMPANY,**
Appellee.

**No. 90-SC-444-DG.**

Supreme Court of Kentucky.

May 9, 1991.

John G. Crutchfield, MacKenzie & Peden, P.S.C., Louisville, for appellant.

Douglas W. Becker, Scott F. Scheynost, Roach, Becker, Wheat & Gallagher, Louisville, for appellee.

LAMBERT, Justice.

At issue in this case is whether appellant, State Automobile Mutual Insurance Company, may recover basic reparation benefits it paid its insured, Mrs. May, from appellee, Empire Fire & Marine Insurance Company, an insurance carrier which pro-vided excess or "umbrella" liability coverage to the negligent party, Mrs. Goldberg. Said otherwise, is an excess liability insurance carrier required to reimburse a reparation obligor for sums paid in basic reparation benefits? As this question appears to be of first impression, we granted discretionary review.

The facts of this case are uncomplicated. Mrs. Goldberg negligently injured Mrs. May in an automobile accident. Mrs. May made a claim for basic reparation benefits against her reparation obligor, appellant State Auto, and it paid approximately $7,500 in medical expenses and lost wages. In addition, Mrs. May asserted a personal injury claim against Mrs. Goldberg, and on her behalf, Automobile Club Insurance Company paid its policy limits of $25,000. It is undisputed that the payment by Automobile Club of its policy limits was appropriate.

■ In addition to the primary liability coverage provided by Automobile Club, Mrs. Goldberg had an "umbrella" liability policy with appellee, Empire Fire & Marine Insurance Company. The parties have agreed that Empire is not a basic reparation obligor as defined by KRS 304.39–010, *et seq.* As the liability limits of Automobile Club, Mrs. Goldberg's basic reparation obligor, were exhausted by payment of the liability claim, appellant, State Auto, asserted a subrogation claim against Empire.

The trial court held that Empire was liable to State Auto pursuant to the provisions of KRS 304.39–070(2). On appeal to the Court of Appeals, the judgment was reversed. In an appropriate analysis of the statute, the Court of Appeals reasoned that as to any insurer or party other than a reparation obligor, the right of subrogation is derivative of the right of the injured person; and inasmuch as Mrs. May had no right to recover the items of damage paid by State Auto from Mrs. Goldberg, her excess carrier, Empire, had no duty to reimburse State Auto.

Our analysis of the applicable statutes begins by reviewing KRS 304.39–060(2).

By this provision, "tort liability ... is 'abolished' for damages ... to the extent the basic reparation benefits provided in this subtitle are payable therefor...." In *Progressive Casualty Ins. Co. v. Kidd*, Ky., 602 S.W.2d 416 (1980), we held:

"[U]nder the Kentucky No-fault Act, an injured party is not entitled to an award of damages from the defendant in the trial on liability for any item of damages which was compensated by BRB...."

"It is clear that this section, taken together with KRS 304.39–070, means that the injured party may not assert a claim which includes benefits already paid by the insurer as BRB." *Id.* at 417.

See also *Hargett v. Dodson*, Ky.App., 597 S.W.2d 151 (1979), *Gussler v. Damron*, Ky. App., 599 S.W.2d 775 (1980), and *Ammons v. Winklepleck*, Ky.App., 570 S.W.2d 287 (1978). Under the Motor Vehicle Reparations Act and as these authorities demonstrate, by failing to preserve her tort rights by rejecting the provisions of the Act, Mrs. May had no claim against Mrs. Goldberg for those items of damage covered by basic reparation benefits; it had been abolished. Likewise, she had no right to recover such damages from Mrs. Goldberg's reparation obligor, Automobile Club Insurance Company, or her excess carrier, Empire.

Next we look to KRS 304.39–070(3). This section expressly authorizes a reparation obligor such as State Auto to recover basic reparation benefits from the reparation obligor of the secured person. This right is specially created by statute and allows subrogation between basic reparation obligors provided available coverage is not exhausted and that payments to the injured party are not diminished. See KRS 304.39–070(4) and KRS 304.39–140(3). The provisions of KRS 304.39–070(3) provide for subrogation *only* between basic reparation obligors.

▇ As the principal authority for his claim, appellant relies upon KRS 304.39–070(2). This statute is as follows:

"*A reparation obligor* which has paid or may become obligated to pay basic reparation benefits *shall be subrogated* to the extent of its obligations to all *of the rights of the person suffering the injury against any person or organization other than a secured person.*" (Emphasis added.)

Appellant construes the language "any person or organization other than a secured person" to be unlimited and allow for subrogation against any available entity except the secured person. What appellant overlooks, however, is the language which makes such right derivative. The right of the reparation obligor to subrogation is dependent upon the right of the injured person to recover such damage. Inasmuch as the injured person's right to recover is abolished by KRS 304.39–060(2)(a), the reparation obligor has no right to recover items of damage not available to the injured person.

Appellant contends that the foregoing construction renders the language of KRS 304.39–070(2) essentially meaningless. A number of our decisions indicate otherwise. In *Ohio Casualty Ins. Co. v. Atherton*, Ky., 656 S.W.2d 724 (1983), we held that a reparation obligor was entitled to assert its subrogation claim against an uninsured motorist as he was not a "secured person." Likewise, in *Bailey v. Reeves*, Ky., 662 S.W.2d 832 (1984), we noted that the abolition of tort liability in KRS 304.39–060(2)(a) was only against

" 'the owner, registrant, operator or occupant of a motor vehicle with respect to which security has been provided as required' by the Act. *Against all other persons, motorists and nonmotorists, the 'action for tort liability' is not abolished.*" (Emphasis added.) *Id.* at 835.

A virtually endless catalog of circumstances could be compiled in which a person covered by the Act would be injured by the conduct of a person or entity which was not a "secured person." In such a circumstance, the reparation obligor of the injured person would be entitled to subrogation against the party at fault or, derivative thereof, its insurer.

In its opinion, the Court of Appeals noted, and it is worthy of repetition here, that Kentucky is not a direct action jurisdiction.

*Cuppy v. General Accident Fire & Life Insurance Corp.*, Ky., 378 S.W.2d 629 (1964). In ordinary circumstances, an injured party must first obtain judgment against the opposing party defendant and then seek enforcement of the judgment rendered in an action against the defendant's indemnitor. Applying this rule here, for appellant to prevail, it would be necessary to first obtain judgment against Mrs. Goldberg before proceeding against appellee. As Mrs. Goldberg is fully protected by the provisions of the Act, such is impossible.

For the foregoing reasons, the judgment of the Court of Appeals is affirmed.

STEPHENS, C.J., and REYNOLDS, SPAIN and WINTERSHEIMER, JJ., concur.

LEIBSON, J., dissents by separate opinion in which COMBS, J., joins.

LEIBSON, Justice, dissenting.

Respectfully, I dissent.

Those of us who have been struggling to construe the many nonsensical provisions in the no-fault provisions of the Motor Vehicle Reparations Act so that the law will make some sense, can sympathize with the difficulty of doing so in this particular case. But this does not mean we should abandon the enterprise.

The no-fault law intended to "abolish" the right of an injured person to recover in tort against a "secured person" for medical expenses and wage loss, and, indeed, for any tort liability at all if the nature of the claim does not exceed one of the statutory thresholds specified in KRS 304.39–060. The word "abolish" is used in quotes in KRS 304.39–060(2)(a), but it is not defined elsewhere. Presumably it is put in quotation because the word is being used in a special, limited sense, rather than a general sense. It is used in the sense that it destroys *only* those causes of action expressly abolished by the machinery of the Act. The cause of action on behalf of a reparation obligor which has paid the injured victim against the tortfeasor's liability insurance carrier is *not* one specifically destroyed by the Act, nor is there any reason to assume that such was intended, because to do so conflicts with the statutory scheme.

A reparation obligor has paid the debt of the tortfeasor, and has done so in circumstances where it would be subrogated to recover that debt from the tortfeasor or that person's liability insurance carrier. If the tortfeasor is a "secured person" as defined in the Act, she cannot be sued. But this should be viewed as a special statutory shield not extending to others who share liability for the damages the tortfeasor has caused. The tortfeasor's liability insurance carrier is not a "secured person," and while this carrier's liability to pay the tortfeasor's debt may derive from the insured's misconduct, there is nothing in the Act specifying that the obligation to pay is cut off simply because the insured enjoys statutory immunity. There is no reason consistent with the purposes of the Act for implying that it does so, and there are two very good reasons for believing otherwise.

The first of these reasons is that a fair reading of KRS 304.39–070(2) and (3) suggests that the liability insurance industry, the insurance companies which sponsored the no-fault legislation, while intending this legislation to limit damages available to the injured victim did not intend to limit their own interests. These sections are an attempt to retain the fault principle and indemnity wherever possible. Subsection (2) specifies that a "reparation obligor ... shall be subrogated to the extent of its obligations to all of the rights of [its insured] against any person or organization other than a secured person." Subsection (3) sets up an elaborate mechanism whereby the reparation obligor who has paid no-fault benefits may recover from others at fault by various means, including, but not limited to, arbitration against the tortfeasor's liability insurance carrier. This is totally inconsistent with that right to recover back having been cut off because the tortfeasor's carrier has only derivative liability. I am convinced that those who drafted this legislation did not intend to

limit their right to recover from third parties for whatever no-fault benefits they should be required to pay, except to the extent absolutely necessary to structure the Act. To do so it was necessary to exclude only the right to recover back from a secured person. It is logical to believe the no-fault insurance lobby intended the reparation obligor to retain the right to recover back from all others, a right which would inure to it from the contract of insurance, from common law principles of restitution, and from KRS 304.39–070(2), (3).

In the present case the tortfeasor carried her liability insurance coverage in two policies, a basic policy and an umbrella policy, rather than one policy. Because the basic policy has already paid its limits to the accident victim, there was no money available to pay the reparation obligor. Had all the liability coverage been written in one policy, the funds to pay this obligation would be available. There is no practical or sensible reason to distinguish between the two situations.

This brings us to the second important reason why this case should be reversed. It is a matter of fundamental importance to maintain a just and responsible society that liability should follow fault. Fundamental fairness dictates that the person who causes the loss should be obliged to pay for it, and if that person has liability insurance to cover the loss, the tortfeasor's liability insurer should perform on its obligation. As a matter of practical expediency, the General Assembly has seen fit to give up this principle to a limited extent by adopting the no-fault law. Supposedly this was necessary expediency to meet a crisis in the cost and availability of automobile liability insurance. The no-fault law should be interpreted consistent with giving up no more of the fault principle than the statute demands. The present opinion gives way to the no-fault concept in a way that was not specified, not required to carry out its purposes, and, indeed, obviously not intended by its proponents.