Barbara YOUNG and Kenneth Young, Plaintiffs,

Grange Mutual Insurance Company, Intervening Plaintiff–Appellant,

v.

UNITED STATES of America, Defendant–Appellee.

No. 94–6035.

United States Court of Appeals, Sixth Circuit.

Dec. 27, 1995.

Michael W. Troutman (argued and briefed), Fowler, Measle & Bell, Lexington, KY, for Grange Mut. Ins. Co.

Jacob M. Lewis, Robert S. Greenspan, Richard A. Olderman (briefed), Edward Himmelfarb (argued), U.S. Dept. of Justice, Civ. Div., Appellate Staff, Washington, DC, for U.S.

Before: MARTIN and BATCHELDER, Circuit Judges; EDMUNDS, District Judge.*

BOYCE F. MARTIN, Jr., Circuit Judge.

Grange Mutual Insurance Company appeals the dismissal of its complaint against the United States under the Federal Tort Claims Act seeking basic reparation benefits. Grange paid its insured under Kentucky's no-fault auto insurance statute where injuries had resulted from a collision with a mail truck. The United States argues dismissal was proper because it enjoys statutory immunity.

**I.**

Grange issued an automobile insurance policy to Barbara and Kenneth Young, residents of Greensburg, Kentucky. As required by the Kentucky Motor Vehicle Reparations Act, the Youngs were insured for no-fault or basic reparation benefits up to $10,000.[1] On

---

* The Honorable Nancy G. Edmunds, United States District Judge for the Eastern District of Michigan, sitting by designation.

1. Basic reparation benefits are also known as personal injury protection benefits. Ky.Rev.Stat. Ann. § 304.39–020(2) (Michie/Bobbs–Merrill 1988) describes the benefits as "providing reimbursement for net loss suffered through injury arising out of the operation, maintenance or use of a motor vehicle, subject, where applicable, to the limits, deductibles, exclusions, disqualifications and other conditions provided in this subtitle. The maximum amount of basic reparation benefits payable for all economic loss resulting from injury to any one person as the result of one (1) accident shall be ten thousand dollars ($10,-000), regardless of the number of persons entitled to such benefits or the number of providers of security obligated to pay such benefits. Basic

June 10, 1991, while driving in Green County, Kentucky, Barbara Young was injured when Gilbert Larimore, a United States postal employee driving a postal service vehicle, pulled out in front of and collided with her vehicle. The vehicle driven by Barbara Young was owned by Kenneth Young. There was no evidence that Barbara Young was violating any rule of the road. Conversely, under Kentucky law, Larimore failed to yield the right-of-way while entering onto a superior roadway from a subordinate one. Because the accident occurred while Larimore was driving a vehicle titled in the name of the United States in the course and scope of his employment, his negligent conduct is imputed to the United States Postal Service and the United States. The United States therefore bears all liability for Larimore's negligence.

As a result of the accident, Barbara Young suffered shoulder strain and post-traumatic stress disorder, and the vehicle she was driving was damaged. Pursuant to the Kentucky no-fault statute and its own policy of insurance, Grange paid basic reparation benefits of $7,283.08 to the Youngs for expenses incurred as a result of the accident. Having exhausted their administrative remedies, the Youngs subsequently filed timely suit against the United States and the United States Postal Service pursuant to 28 U.S.C. § 1346(b) and §§ 2671–2680 seeking recovery for the personal injuries and property damage that resulted from the accident.

On May 3, 1993, Grange moved to intervene in the Youngs' Federal Tort Claims Act suit to recover from the United States the $7,283.08 it had paid to the Youngs as basic reparation benefits. The claim was pursuant to Ky.Rev.Stat.Ann. § 304.39–070(3), which states that an insurer may intervene in an action commenced by an injured party to recover for the payment of basic reparation benefits from the basic reparation obligor of a secured tortfeasor. Grange's intervening complaint demanded subrogation to Barbara Young against the United States to the extent that it had and would pay basic reparation benefits to the Youngs. Grange's mo-

tion to intervene was granted on June 15, 1993. The United States subsequently moved to dismiss the intervening complaint pursuant to Rules 12(b) and 12(h)(3) of the Federal Rules of Civil Procedure on the grounds that it failed to state a claim upon which relief could be granted, and that the court lacked subject matter jurisdiction over the matter. On April 7, 1994, the district court dismissed Grange's motion to intervene because the federal government had not waived immunity for these types of claims, and Grange therefore failed to state a claim for relief under the Federal Tort Claims Act.

The Youngs' claim against the postal service proceeded to trial, and on June 23, 1994, the district court awarded the Youngs damages against the United States for personal injuries and property damage exclusive of the basic reparation benefits paid by Grange to the Youngs. Grange here continues to assert that it is entitled to reimbursement from the United States for the benefits it paid to the Youngs, while the United States continues to deny liability. We are called upon to resolve this single issue of statutory interpretation.

## II.

▮ Whether the United States can be held liable under the Federal Tort Claims Act for basic reparation benefits paid by Grange under the Kentucky no-fault statute is a question of law that we review *de novo. In re Laguna Assoc. Ltd. Partnership,* 30 F.3d 734, 737 (6th Cir.1994).

▮ The Federal Tort Claims Act grants a limited waiver of sovereign immunity and allows tort claims "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674 (1988). The Act "waives sovereign immunity to the extent that state-law would impose liability on a 'private individual in similar circumstances.'" *Myers v. United States,* 17 F.3d 890, 899 (6th Cir.1994). The "like circumstances inquiry" is not intended to be overly stringent. *Lozada v. United States,* 974 F.2d 986, 988 (8th Cir.1992) (cit-

reparation benefits consist of one (1) or more of the elements defined as 'loss.'" The term "loss" is further defined at Ky.Rev.Stat.Ann. § 304.39–020(5).

ing *Owen v. United States*, 935 F.2d 734, 737 (5th Cir.1991), *cert. denied*, 502 U.S. 1031, 112 S.Ct. 870, 116 L.Ed.2d 775 (1992) and also stating that, in order to effectuate the legislative aim of putting private parties and the federal government on equal footing, the Act should be interpreted broadly).

As a general rule, domestic liability on the part of the federal government under the Federal Tort Claims Act is determined in accordance with the law of the state where the event giving rise to liability occurred. 28 U.S.C. § 1346(b) (1988) and § 2674; *Friedman v. United States*, 927 F.2d 259, 261 (6th Cir.1991) (stating that, because "there is no general civil tort law applicable to the United States," liability is determined under state law). Whether the United States must reimburse Grange for the basic reparation benefits paid to the Youngs is therefore determined by reference to the Kentucky Motor Vehicle Reparations Act.

Kentucky has had an automobile no-fault insurance law in effect since 1974. It requires all individuals who operate, own or register vehicles in the commonwealth to obtain insurance or be self-insured. It further provides for the payment of basic reparation benefits up to $10,000 without regard to fault in the event of an accident. Ky.Rev.Stat. Ann. §§ 304.39–010–340. The no-fault statute aims, in part, to eliminate perceived inequities created by the old fault-determination system, and to reduce the need to resort to bargaining and litigation. Ky.Rev.Stat.Ann. § 304.39–010(2) and (5).

In the normal two vehicle automobile accident, no-fault abolishes the old theory of fault creating tort liability. The statute states that tort liability "is 'abolished' for damages because of bodily injury, sickness or disease to the extent [that] basic reparation benefits ... are payable therefor ... under any insurance policy or other method of security complying with the requirements of this subtitle." Ky.Rev.Stat.Ann. § 304.39–060(2)(a); *Bohl v. Consolidated Freightways Corp.*, 777 S.W.2d 613, 615 (Ky.Ct.App.1989) (citing *Stone v. Montgomery*, 618 S.W.2d 595 (Ky.Ct.App.1981) and stating that "the [Motor Vehicle Reparations Act] plainly abolishes a motorist's liability to the extent that

[basic reparation benefits] ... are payable for injuries another motorist may incur."). This protection from tort liability is granted to those persons or entities that qualify as "secured persons" under the statute. *See* Ky.Rev.Stat.Ann. § 304.39–070(2) (stating that a "reparation obligor which has paid or may become obligated to pay basic reparation benefits shall be subrogated to the extent of its obligations to all of the rights of the person suffering the injury against any person or organization other than a secured person."). A "secured person" is the "owner, operator or occupant of a secured motor vehicle, and any other person or organization legally responsible for the acts or omissions of such owner, operator or occupant." Ky. Rev.Stat.Ann. § 304.39–070(1).

Under the Kentucky statute, an individual's insurance or self-insurance is the security for payment of basic reparation benefits and any tort liability. The term "security" is defined as "any continuing undertaking complying with this subtitle, for payment of tort liabilities, basic reparation benefits, and all other obligations imposed by this subtitle." Ky.Rev.Stat.Ann. § 304.39–020(17). Security covering a vehicle may be provided through a contract of insurance, by qualifying as a self-insurer, or by becoming an "obligated government." Ky.Rev.Stat.Ann. § 304.39–080(6). The United States government is exempt under the Kentucky Motor Vehicle Reparations Act from the statute's general liability and basic reparation insurance requirements. *See* Ky.Rev.Stat.Ann. § 304.39–080(4).

The Kentucky no-fault statute dictates that injured parties receive basic reparation benefits directly from their own insurers without regard to fault. However, although tort liability between injured persons has been abolished to the extent that no-fault benefits are payable, a fault concept does remain for purposes of allocating responsibility between reparation obligors. Insurance companies that are required to pay basic reparation benefits to injured insureds have limited rights of subrogation against a private party or a tortfeasor's reparation obligor, depending on whether an unsecured or secured par-

ty is responsible for the harm caused to the injured party.

■ Where an unsecured party causes injury, a reparation obligor that is obligated to pay basic reparation benefits may seek reimbursement directly from that party. *See* Ky. Rev.Stat.Ann. § 304.39–070(2) (stating that a "reparation obligor which has paid or may become obligated to pay basic reparation benefits shall be subrogated to the extent of its obligation to all of the rights of the person suffering the injury against any person or organization *other than a secured person.*") (emphasis added). Section 304.39–310(2) stands for the similar proposition that if an owner or registrant of a motor vehicle fails to have security when the vehicle is involved in an accident, that owner or registrant has all rights and obligations of a reparation obligor, and "any other reparation obligor which has paid or may become obligated to pay basic or added reparation benefits to an injured person ... shall be subrogated to the rights of the injured person against such owner or registrant."

■ Where a secured party is involved, a reparation obligor has the "right to recover basic reparation benefits paid to or for the benefit of a person suffering the injury from the *reparation obligor* of a secured person." Ky.Rev.Stat.Ann. § 304.39–070(3) (emphasis added) (stating also that one means of recovering these benefits is to join as a party in an action that may be commenced by the person suffering the injury). Tort liability is therefore preserved for the reparation obligor of an injured party who is seeking recovery from the reparation obligor of a secured person. In other words, although an insurer is not permitted to proceed directly against a secured party for basic reparation benefits paid up to the first $10,000, it may exercise its subrogation rights against the reparation obligor of a secured person by joining in a lawsuit brought by an injured party to whom it paid basic reparation benefits.

In the district court, Grange moved to intervene in the Youngs' cause of action on the theory that the United States is liable under the Federal Tort Claims Act for subrogated tort claims as a "reparation obligor" because tort liability as between two repara-

tion obligors has not been abolished under the Kentucky no-fault statute. The United States, by contrast, claimed that it is not liable under the Federal Tort Claims Act for payment of those benefits by Grange because it qualifies as a "secured party" immune from basic reparation benefits liability under the Kentucky no-fault statute. The United States believes that it most closely resembles a "secured party" under the Kentucky statute, and therefore should be treated as one, despite the fact that it is incapable of ever standing in the precise shoes of a private party. The question for us is whether the United States is to be treated as a "reparation obligor" or a "secured party" for subrogation purposes under the Kentucky Motor Vehicle Reparations Act.

### III.

■ In order to qualify as a "reparation obligor" under the Kentucky Motor Vehicle Reparations Act and thus be subject to Grange's subrogation claim, the United States would have to be: (1) an insurer, (2) a self-insurer, or (3) an obligated government providing basic or added reparation benefits. Ky.Rev.Stat.Ann. § 304.39–020(13). We do not believe that the United States fits into any of these three categories for purposes of the Kentucky no-fault scheme.

■ First, the United States cannot be viewed as an "insurer" for subrogation purposes under the Kentucky no-fault statute. Although the statute does not define the term "insurer," standard rules of statutory construction require that words be given their plain meanings. The term "insurer" in the statute speaks clearly to mean commercial insurance companies providing no-fault benefits under the Kentucky no-fault statute. *See Blue Cross & Blue Shield, Inc. v. Baxter,* 713 S.W.2d 478, 480 (Ky.Ct.App.1986) (stating that group health insurers that do not provide no-fault benefits are not "insurers" under the Kentucky Motor Vehicle Reparations Act). Because the United States is not a commercial insurance company with whom an insurance contract has been made to provide no-fault benefits, it cannot be deemed to

be an "insurer" for purposes of the Kentucky no-fault statute.

■ Second, the United States is not a "self-insurer" under the Kentucky Motor Vehicle Reparations Act. It has not taken the affirmative steps necessary to apply for such status. Ky.Rev.Stat.Ann. § 304.39–080(7) states that self-insurance status is "subject to approval of the commissioner of insurance," and requires the entity seeking such status to file documentation with the commissioner. There is no indication that the federal government fulfilled the statutory requirements for "self-insurer" certification in this case.

■ Finally, the United States does not qualify as an "obligated government" under the Kentucky statute. While Ky.Rev.Stat. Ann. § 304.39–080(4) and (8) give the United States the *option* of providing security for the payment of basic reparation benefits, the statutory language is merely permissive. Section 304.39–080(4) states in part that "[t]he United States … *may* provide … security for the payment of basic reparation benefits in accordance with this subtitle for injury arising from maintenance or use of motor vehicles owned by [the United States] and operated with [the United States'] permission." (emphasis added). Section 304.39–080(8) indicates that the United States "*may* provide security by lawfully obligating itself to pay basic reparation benefits." (emphasis added). Moreover, decisions by the Kentucky courts have held that the United States is expressly excluded from the financial responsibility provisions of the Kentucky no-fault statute unless the federal government opts into those provisions. *See, e.g., Ammons v. Winklepleck,* 570 S.W.2d 287, 288 (Ky.Ct.App.1978) (noting that, "[e]xcept for governmental agencies, every owner of a motor vehicle registered or operated in Kentucky must provide 'security' for the payment of 'basic reparation benefits' and the payment of 'tort liabilities.' "). Because the United States did not expressly opt into the Kentucky no-fault scheme, the federal government does not qualify as "an obligated government" for subrogation purposes under the Kentucky Motor Vehicle Reparations Act.

■ As a sovereign, "the United States is immune from suit except to the extent that it has unequivocally consented to litigation against itself." *LaBarge v. County of Mariposa,* 798 F.2d 364, 366 (9th Cir. 1986), *cert. denied,* 481 U.S. 1014, 107 S.Ct. 1889, 95 L.Ed.2d 497 (1987) (citing *United States v. Orleans,* 425 U.S. 807, 814, 96 S.Ct. 1971, 1975–76, 48 L.Ed.2d 390 (1976)). Recognizing that the federal government should be liable for the negligence of its employees acting within the scope of their employment, the United States consented to be sued for certain tort actions through the ·Federal Tort Claims Act. It is a limited waiver of immunity. The extent of that waiver (i.e. the United States' amenability to suit and substantive tort liability) is determined by analogizing the United States to a private actor in a similar situation under the appropriate state law. *LaBarge,* 798 F.2d at 366. The Kentucky no-fault statute makes it clear that government units are exempt from any responsibility to provide security for basic reparation benefits. Without express statutory language to the contrary or a more extensive waiver of sovereign immunity, the United States can only be held liable to the Youngs for Larimore's negligence for any recovery beyond $10,000 because the Kentucky no-fault statute abolishes tort liability to the extent that basic reparation benefits are available from the Youngs' personal insurance carrier, Grange.

■ Because the United States does not qualify as a "reparation obligor" for purposes of basic reparation benefits liability, the only other way that the federal government could be held liable to Grange is if it were deemed to be an unsecured party falling outside of the protection afforded to secured parties under the Kentucky Motor Vehicle Reparations Act. The United States contends, however, that it should be deemed as having the same status as a private individual tortfeasor who is a "secured person" under the no-fault statute, and therefore deserves the protection that similarly situated private parties would receive under the statute.

As a sovereign, it is impossible for the United States ever to stand precisely in the shoes of a private person. We look for a

reasonable analogy to determine the status of the United States with regard to the subrogation provisions of the Kentucky Motor Vehicle Reparations Act. *See Carter v. United States,* 982 F.2d 1141, 1144 (7th Cir.1992) (stating that "[t]he national government is never situated identically to private parties," and that the task "is to find a fitting analog under private law.").

Ky.Rev.Stat.Ann. § 304.39–070(2) specifically excludes secured parties from liability for the reimbursement of basic reparation benefits to an injured party's basic reparation benefits obligor. Under Ky.Rev.Stat. Ann. § 304.39–070(1), a secured party is defined as the "owner, operator or occupant of a secured motor vehicle, and any other person or organization legally responsible for the acts or omissions of such owner, operator or occupant." Because the United States is legally responsible for postman Larimore's acts or omissions, we conclude that the United States occupies a position similar to that of a "secured person" under Ky.Rev.Stat. Ann. § 304.39–070(1).

To be exempt from liability for subrogation claims, however, not only must the United States stand in circumstances similar to those of a "secured party," but the vehicle involved in the accident must have been a "secured motor vehicle." Ky.Rev.Stat.Ann. § 304.39–070(1). Although the Kentucky no-fault statute does not define the term "secured motor vehicle," the statute does define "security." Ky.Rev.Stat.Ann. § 304.39–020(17) defines it as "any continuing undertaking complying with this subtitle, for payment of tort liabilities, basic reparation benefits, and all other obligations imposed by this subtitle." The postal truck driven by Larimore was secured because the United States provided "other security" for the vehicle by assuming full responsibility for the negligence of federal employees operating motor vehicles on the by-ways of the commonwealth. The federal government assumes such responsibility by providing financial security under two statutes: 5 U.S.C. §§ 8101–8193 (1980) (The Federal Employees Com-

pensation Act) and the Federal Tort Claims Act.[2] Furthermore, coverage under the statutes exceeds the coverage mandated by the Kentucky Motor Vehicle Reparations Act. Grange's argument that the United States failed to provide security to third parties, and therefore could not meet a test of functional equivalence, is without merit. The United States' legal responsibility to provide benefit coverage to its own employees under the Federal Employees Compensation Act and to injured tort victims through the waiver of sovereign immunity under the Federal Tort Claims Act constitutes "security covering the vehicle." The United States has thus provided the functional equivalent of basic reparation benefits under Ky.Rev.Stat.Ann. § 304.39–020(2).

A recent Tenth Circuit decision lends support to this reasoning. It holds that the status of the United States with regard to its liability under a no-fault statute is functionally equivalent to that of a secured private party. In *Nationwide Mutual Ins. Co. v. United States,* 3 F.3d 1392 (10th Cir.1993), an insurance company relied on a subrogation theory to try to recover from the federal government under the Federal Tort Claims Act after paying benefits to an insured party who suffered injuries during a collision with a postal vehicle. In that case, the Court held that:

> so long as the United States provides protection that is equivalent to that which [the state] can and does require of private parties, the United States should be able to take advantage of the immunity that [the state] law offers to private parties. Accordingly, since the United States functionally complied with the requirements of [the state statute] by maintaining a financially responsible system of self-insurance, we conclude that the United States was in "like circumstances" to a private individual who actually procured insurance from a [state] licensed insurer.

*Id.* at 1396.

Because the United States provided the functional equivalent of the security required by the Kentucky Motor Vehicle Reparations

---

**2.** The Federal Employees Compensation Act provides the exclusive liability of the United States for a personal injury sustained by a federal employee while in the performance of his duties. 5

U.S.C. §§ 8102 and 8116(c). The Federal Tort Claims Act provides unlimited dollar compensation for the negligence of a federal employee acting within the scope of his employment.

Act, it satisfied its financial obligation under the state statutory scheme. As a sovereign, the United States is not required to comply literally with the Kentucky no-fault law. Rather, because the federal government assumed similar obligations through the Federal Tort Claims Act and the Federal Employees Compensation Act, it is entitled to the same immunity that a "private individual in like circumstances" who actually complied with the no-fault statute would be afforded. In Kentucky, an injured party who receives basic reparation benefits from his or her insurer has no cause of action against a "secured" driver of a vehicle that injured him or her, or the driver's employer, for the first $10,000 of basic reparation benefits paid out to that individual. Because the Motor Vehicle Reparations Act precludes basic reparation benefits recovery from secured tortfeasors, the United States is immune from the subrogation liability that Grange seeks. **AFFIRMED.**