**Rose PETTY, et al., Plaintiffs–Appellants,**

v.

**UNITED STATES of America, et al., Defendants–Appellees.**

No. 02–1605.

United States Court of Appeals, Sixth Circuit.

Nov. 17, 2003.

Seymour Berger, Southfield, MI, for Plaintiff–Appellant.

Alan M. Gershel, U.S. Attorney's Office, Kathleen Moro Nesi, Asst. U.S. Attorney, Dennis Burnett, Sheri L. Whyte, City of Detroit Law Department, Detroit, MI, for Defendant–Appellee.

Before NELSON, CLAY, and COOK, Circuit Judges.

NELSON, Circuit Judge.

This case arises from the execution of a search warrant. The plaintiffs claim that the decision of federal officers to search their house was negligent and that municipal officers violated their constitutional rights while participating in the search.

The district court determined that the defendants are entitled to judgment as a matter of law. We agree. The claim of negligence is defeated by undisputed evidence that a reliable informant identified the plaintiffs' house as a place from which drugs were sold. That evidence is unaffected by the fact that the search warrant incorrectly stated the plaintiffs' house number. The constitutional claim, which was brought against the city of Detroit rather than any individual officers, is defeated by the absence of a municipal policy or custom resulting in the plaintiffs' harm. The judgment entered by the district court will therefore be affirmed.

I

Everett Monroe, a Detroit police officer who was assigned to a multi-jurisdictional task force directed by the Federal Bureau of Investigation, received information in July of 1998 that narcotics were being sold from two houses on Norwalk Street in

Detroit. One of the houses was at 6224 Norwalk, and the other, Officer Monroe was told, was "next door." Because there was a house on either side of 6224 Norwalk, Monroe asked his source whether the second house was "going towards the alley or away from the alley" or "towards . . . Mt. Elliott or away from Mt. Elliott." The informant said the house was further away from the alley and Mt. Elliott Street, both of which were east of 6224 Norwalk. Monroe therefore concluded that the second house was west of 6224 Norwalk.

Officer Monroe drove by the house to determine its address. In a deposition taken in December of 2000, Monroe at first said he had seen the number 6218 on the house in question. Soon thereafter, however, Monroe said he had seen the number 6220 but had been told by other officers that the address was actually 6218 Norwalk. In any event, Officer Monroe sought and obtained search warrants for 6224 and 6218—not 6220—Norwalk.

The warrant for 6218 Norwalk described the property as a "single family, two story dwelling" with "white aluminum siding." Officer Monroe's affidavit, which was appended to the warrant, indicated that 6218 Norwalk was "next to" 6224 Norwalk. In addition to the real property, the warrant authorized the search of a man named Darnell May, who was said to have been connected by the informant with drug activity at both 6224 and 6218 Norwalk. According to Monroe's affidavit, this informant had provided reliable information on more than 10 previous occasions.

Officers of the Detroit Police Department executed the search warrants with perimeter support from the multi-jurisdictional task force of which Officer Monroe was a member. Although the warrants specified 6224 and 6218 Norwalk, the offi-cers entered and searched 6224 and 6220 Norwalk. As it turns out, there is no house numbered 6218 Norwalk. 6220 Norwalk—a two-story home with white aluminum siding—is the house immediately west of 6224 Norwalk.

The initial entry into 6220 Norwalk was made by the Detroit Police Department's Special Response Team. Rose Petty and two of her adult children, Joanne Person and Clifton Petty, were at home when the Special Response Team entered the house. Ms. Person and Mr. Petty were made to lie face-down on the floor during the search, while Ms. Petty, an elderly woman, was made to lie on a bed. According to Ms. Petty, an officer stood on the bed with his foot on her head and a gun pointed at her.[1] Another of Ms. Petty's children, Phillip Petty, ran across the street from his home at 6215 Norwalk, but a task force member tripped him up and held him on the ground outside his mother's house. According to Mr. Petty, he was made to lie prone for 30 minutes with officers' feet on his back and neck. Darnell May, who is the son of Ms. Person and grandson of Ms. Petty, was not present at 6220 Norwalk during the search.

While the search was going on, one of the task force members noticed that the house number did not match the number stated in the warrant. He knew that 6220 Norwalk was the right house, however, because of the description in the warrant and the affidavit. The agent radioed Officer Monroe, who was also confident that the right house was being searched. Monroe's informant later confirmed that fact. No drugs were found in the search of 6220 Norwalk, however, and the Pettys (including Ms. Person) were not arrested or charged with any crime. The Pettys

---

1. Ms. Person says that the officer was straddling her mother while holding a gun to her head.

heard officers say "we have the wrong house."

Rose Petty, Joanne Person, Clifton Petty, and Phillip Petty sued the United States under the Federal Tort Claims Act and the city of Detroit under 42 U.S.C. § 1983. They did not sue any individual federal or municipal officers. The plaintiffs' claims were based on the execution of the search warrant at an address other than that specified in the warrant, the detention of the plaintiffs during the search, and personal injury and property damage caused during the search. Both defendants moved for summary judgment.

The district court granted the motions. As to the United States, the court held that the decision to search 6220 Norwalk was not negligent even though a different address was stated in the search warrant. As to the city of Detroit, the court held that the plaintiffs had not identified an unconstitutional municipal policy or custom. The plaintiffs have filed a timely appeal.

## II

Upon de novo review, see, *e.g., Bowman v. Shawnee State University,* 220 F.3d 456, 461 (6th Cir.2000), we conclude that the district court acted properly in granting the summary judgment motions.

## A

■ The Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 *et seq.,* authorizes suits against the United States "for the negligence of a federal employee acting within the scope of his employment." *Young v. United States,* 71 F.3d 1238, 1245 n. 2 (6th Cir.1995). The plaintiffs argue that Officer Monroe was negli-

gent in causing their house to be searched. They also appear to argue that the officers who entered 6220 Norwalk were negligent in searching an address not specified in the warrant.

By virtue of his assignment to an FBI-operated task force, Officer Monroe is considered a federal employee for purposes of the FTCA. See 5 U.S.C. § 3374(a) and (c). It is clear, moreover, that Monroe was acting within the scope of his employment when he obtained a search warrant for 6218 Norwalk.

But there is no evidence of actionable negligence on the part of Officer Monroe. He utilized a tip from a source that had provided reliable information in the past. Although the informant did not know the address of the house "next door" to 6224 Norwalk, the informant told Monroe it was the house further away from the alley and Mt. Elliott. This information allowed Monroe to determine with certainty which house the informant had in mind. Officer Monroe gave the wrong house number when he applied for the warrant, but that error did not cause police to search the wrong house. The informant fingered the house immediately west of 6224 Norwalk, and that is the house that the officers searched. The decision to search is not rendered negligent, of course, by the fact that no drugs were found.[2]

■ As for the Detroit police officers who entered the Petty home, their actions cannot be the basis of liability under the FTCA because they are not federal employees. Even if they had been federal employees, moreover, we are not persuaded that these officers would have been guilty of actionable negligence in their in-

---

2. At oral argument, the plaintiffs' attorney argued that "we have the wrong house," when uttered by police on the night of the search, meant that the plaintiffs' house was not a drug house. The statement might also,

we think, have meant that the house number did not match the warrant. Either way, the statement does not alter the fact that police searched the house that the informant had identified.

terpretation of the warrant. It is true that the warrant said 6218 Norwalk, not 6220 Norwalk. But 6218 Norwalk did not exist, and 6220 Norwalk fit the description given in the warrant and the attached affidavit—it was a white, two-story dwelling located next to 6224 Norwalk.[3] For these reasons, the plaintiffs have no triable claim of negligence against the United States.[4]

**B**

■ The Supreme Court has made it clear that a municipality may be held liable under § 1983 only if a municipal "policy" or "custom" caused the plaintiff's injury. See, e.g., Board of County Commissioners v. Brown, 520 U.S. 397, 403–04, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997). The plaintiffs point to two policies or customs that they say support municipal liability here: (1) the Detroit Police Department's execution of search warrants on behalf of a federally operated task force, and (2) the police department's use of masked officers to execute warrants.[5] We are at a loss to see how either of these policies caused an injury in violation of the Constitution. The plaintiffs have adduced no evidence that the Detroit Police Department has a custom or policy of inflicting personal injury or property damage while performing searches. The plaintiffs thus have no triable claim under § 1983.

AFFIRMED.

---

3. The house on the other side of 6224 Norwalk was tan.

4. It was a federal agent who allegedly "stomped" on Phillip Petty's neck while detaining him outside of 6220 Norwalk. The plaintiffs' brief does not contend that the United States can be held liable for negligence on this basis, however. The section of the brief addressing the liability of the United States focuses solely on the search of 6220 Norwalk.

5. There was testimony that members of the Detroit Police Department's Special Response Team—the team that entered 6220 Norwalk—routinely wear balaclavas for safety reasons while executing warrants.