**CITY OF LOUISVILLE; and Daniel P. Alpiger, Appellants**

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Appellee.**

**No. 2004–SC–0048–DG.**

Supreme Court of Kentucky.

June 15, 2006.

Gregory Scott Gowen, Carrie Pearson Hall, Assistant County Attorney, Louisville, KY, Counsel for Appellants.

Kenneth E. Dunn, Barnett, Porter, Dunn & Tobin, Louisville, KY, Counsel for Appellee.

R. Allen Button, Whonsetler & Johnson, Louisville, KY, Counsel for Amicus Curiae Transit Authority of River City.

Stanley W. Whetzel, Jr., Laurence Zielke, Pedley, Zielke, Gordinier & Pence, PLLC, Louisville, KY, Counsel for Amicus Curiae Louisville and Jefferson County Metropolitan Sewer District.

Opinion of the Court by Justice COOPER.

On May 18, 1999, Jerald Owen sustained personal injuries when his automobile col-

lided with an unmarked police vehicle at the intersection of Hurstbourne Parkway and Westport Road in Jefferson County, Kentucky. The unmarked police vehicle was owned by Appellant, City of Louisville ("the City"), and was being operated by Appellant, Daniel P. Alpiger, an employee of the City. Owen's vehicle was insured by Appellee, State Farm Mutual Automobile Insurance Company, which paid basic reparation benefits (BRB) to Owen pursuant to KRS 304.39–040 and the terms of its policy. The City's vehicle was not insured by a standard automobile insurance policy. Instead, the City annually appropriated funds for the payment of tort liabilities and expenses. The City admits that, pursuant to KRS 304.39–080(3), it had opted not to provide for BRB payments as defined in KRS 304.39–010(1).

■ Owen sued the City and Alpiger for tort damages insofar as those damages exceeded the amounts paid or payable to him as BRB. State Farm intervened to assert its subrogation claim against the City and Alpiger for recoupment of the BRB payments that it made to Owen. The two principal provisions of the Kentucky Motor Vehicle Reparations Act (MVRA) pertaining to BRB subrogation claims are found in KRS 304.39–070, *viz:*

(2) A reparation obligor which has paid or may become obligated to pay basic reparation benefits shall be subrogated to the extent of its obligations to all of the rights of the person suffering the injury against any person or organization *other than a secured person.*

(3) A reparation obligor shall have the right to recover basic reparation benefits paid to or for the benefit of a person suffering the injury *from the reparation obligor of a secured person* as provided in this subsection
. . . .

(Emphasis added.) Under these provisions, if the injury was caused by an unsecured person, the injured party's reparation obligor may obtain BRB reimbursement directly from the unsecured person; but if the injury was caused by a secured person, the injured party's reparation obligor may obtain BRB reimbursement only from the secured person's reparation obligor. *Young v. United States,* 71 F.3d 1238, 1243 (6th Cir.1995) (construing KRS 304.39–070(2) & (3)).

The Jefferson Circuit Court entered a summary judgment dismissing State Farm's subrogation claims against the City and Alpiger. The Court of Appeals reversed. We granted discretionary review and now affirm the Court of Appeals.

■ The City is not a reparation obligor; thus, KRS 304.39–070(3) has no application here. KRS 304.39–020(13) defines a reparation obligor as "an insurer, self-insurer, or obligated government providing basic or added reparation benefits under this subtitle." Further, KRS 304.39–080 provides in pertinent part:

(3) This Commonwealth, its political subdivisions, *municipal corporations,* and public agencies *may* continuously provide, pursuant to subsection (6), *security for the payment of basic reparation benefits* in accordance with this subtitle for injury arising from maintenance or use of motor vehicles owned by those entities and operated with their permission.

. . . .

(6) Security may be provided by a contract of insurance or by qualifying as a *self-insurer* or *obligated government* in compliance with this subtitle.

(7) *Self-insurance,* subject to approval of the commissioner of insurance, is effected by filing with the commissioner in satisfactory form:

(a) A continuing undertaking by the owner or other appropriate person to pay tort liabilities or basic reparation benefits, or both, and to perform all other obligations imposed by this subtitle;

(b) Evidence that appropriate provision exists for prompt and efficient administration of all claims, benefits, and obligations provided by this subtitle; and

(c) Evidence that reliable financial arrangements, deposits, or commitments exist providing assurance, substantially equivalent to that afforded by a policy of insurance, complying with this subtitle, for payment of tort liabilities, *basic reparation benefits, and* all other obligations imposed by this subtitle.

(8) An entity described in subsection (3) ... may provide security *by lawfully obligating itself to pay basic reparation benefits* in accordance with this subtitle ....

(Emphasis added.)

The MVRA was patterned after the Uniform Motor Vehicle Accident Reparations Act. *Bishop v. Allstate Ins. Co.*, 623 S.W.2d 865, 866 (Ky.1981). Section 7(a) of the Uniform Act[1] provides, *inter alia:* "This State, its political subdivisions, municipal corporations, and public agencies, *shall* continuously provide ... security for payment of basic reparation benefits ...." By substituting "may" for "shall" when it enacted KRS 304.39–080(3), our General Assembly gave the City of Louisville the option *not* to provide security for payment of BRB. KRS 446.010(20), (29) ("May" is permissive; "shall" is mandatory.).

 The City admits that it has not filed the requisite form with the commissioner of insurance and has not obligated itself to pay BRB; thus, it cannot be a reparation obligor and is not subject to liability for State Farm's subrogation claim under KRS 304.39–070(3). However, for the same reason, neither the City nor Alpiger is a "secured person" against whom a subrogation claim is precluded by KRS 304.39–070(2); thus, both are subject to liability for State Farm's subrogation claim under that statute.

KRS 304.39–070(1) defines a "secured person" as "the owner, operator or occupant of a secured motor vehicle, and any other person or organization legally responsible for the omissions of such owner, operator or occupant." Thus, in order for the City and Alpiger to be "secured person[s]," the vehicle involved in this accident must have been a "secured motor vehicle."

KRS 304.39–080(1) provides: " 'Security covering the vehicle' is the insurance or other security so provided. *The vehicle for which the security is so provided is the 'secured vehicle.' "* (Emphasis added.) Thus, if there is no "security covering the vehicle," the vehicle is not a "secured vehicle" and the owner and operator are not "secured persons."

KRS 304.39–020(17) defines "security" as "any continuing undertaking complying with this subtitle, for payment of tort liabilities, *basic reparation benefits, and* all other obligations imposed by this subtitle." (Emphasis added.) Since the City opted not to provide BRB coverage for its vehicles, the vehicle owned by the City and operated by Alpiger was not a "secured vehicle" under these definitions or under KRS 304.39–080(7) or (8); thus, the City and Alpiger were not "secured persons" under KRS 304.39–070(1) and were subject

---

1. KRS 304.39–080(3) is Kentucky's statutory analogue to section 7(a) of the Uniform Act.

to being sued by State Farm under KRS 304.39–070(2).

This analysis is consistent with *Ohio Casualty Insurance Co. v. Atherton*, 656 S.W.2d 724 (Ky.1983), which held that since an uninsured motorist (UM) is not a secured person, the reparation obligor of a person injured by the UM can bring a subrogation action directly against the UM for BRB paid to its insured. *Id.* at 726. *See Davis v. Transit Auth. of River City*, 710 S.W.2d 873, 874 (Ky.App.1986) (finding no distinction between an uninsured motorist and a governmental entity that has chosen not to provide no-fault benefits).

The City argues that because it opted not to provide BRB coverage, the BRB provisions of the MVRA, including KRS 304.39–070(2), cannot be applied to it; and, further, that State Farm cannot assert a common law subrogation claim to recoup its BRB payments because its insured could not assert a common law tort claim for any sums payable as BRB. *See* KRS 304.39–060(2)(a); *Carta v. Dale*, 718 S.W.2d 126, 128 (Ky.1986) ("The effect of this statute is to abolish the claims for lost wages and medical expenses of a person injured in an automobile accident against the person who caused the injury to the extent that basic reparations are payable therefor."). However, we held in *Troxell v. Trammell*, 730 S.W.2d 525 (Ky.1987), that opting out of BRB coverage does not nullify the application of any other provisions of the MVRA.

Those persons within this state covered by a statute cannot reject the application of that statute to their situation unless the words of the statute provide for rejection. The words of the MVRA permit the individual to reject BRB coverage and the limitations on tort liability that go with such coverage, but none of the other provisions of the Act.

The MVRA applies alike to everyone who uses a motor vehicle on the public roads in Kentucky. The Act provides, in no uncertain terms, that "any person" who "uses a motor vehicle on the public roadways of this Commonwealth" is, "as a condition of such ... use," "deemed to have accepted the provisions of this subtitle [the MVRA]." KRS 304.39–060(1). This can only mean "any person" and all "provisions."

*Id.* at 526–27 (holding that two-year statute of limitations in KRS 304.39–230 applied even though motorcyclist had rejected optional BRB coverage under KRS 304.39–040(3)). Finally, the reference to common law subrogation principles has no application here. This is a statutory subrogation right and the statute specifically authorizes this subrogation action.

Reliance by Amicus Louisville and Jefferson County Metropolitan Sewer District on *State Automobile Mutual Insurance Co. v. Empire Fire & Marine Insurance Co.*, 808 S.W.2d 805 (Ky.1991), is misplaced. In that case, the reparation obligor intervened in its insured's tort action seeking to recoup its BRB payments from the tortfeasor's *excess insurer*. The tortfeasor was a "secured person," *id.* at 807, so KRS 304.39–070(2) did not apply; and the excess insurer was not a reparation obligor, *id.*, so KRS 304.39–070(3) did not apply. *State Auto* also held that since the injured party could not bring a direct action against the excess insurer, the reparation obligor could not bring a common law subrogation action because the subrogee has no greater rights than the subrogor. *Id.* Amicus construes *State Auto* as also holding that the reparation obligor's BRB subrogation right under KRS 304.39–070(2) is contingent upon the insured's ability to sue the tortfeasor for the same items of damages. As noted *supra*, a person injured in an automobile accident has no cause of action for damages for which

BRB is paid or payable. KRS 304.39–060(2); *Carta v. Dale,* 718 S.W.2d at 128. In fact, *State Auto* seems to hold only that the injured person has no cause of action against a "secured person" for damages paid or payable as BRB. *Id.* at 807 (quoting *Bailey v. Reeves,* 662 S.W.2d 832, 835 (Ky.1984)). That holding, of course, is consistent with the preclusion clause of KRS 304.39–070(2), *i.e.,* "other than a secured person." Since the City and Alpiger are not "secured persons," the holding in *State Auto* does not preclude State Farm's subrogation action in the case *sub judice.*

Accordingly, we affirm the Court of Appeals and remand this case to the Jefferson Circuit Court for further proceedings consistent with this opinion.

LAMBERT, C.J.; GRAVES, JOHNSTONE, ROACH, and SCOTT, J.J., concur.

WINTERSHEIMER, J., dissents by separate opinion.

Dissenting opinion by Justice WINTERSHEIMER.

I must respectfully dissent from the majority opinion because the City of Louisville is expressly exempt from providing security for the payment of basic reparation benefits. Subsection 6 of KRS 304.39–080(5), explicitly provides that the entities enumerated in § –080(3), that is, the Commonwealth, its political subdivisions, municipal corporations, and public agencies may provide security under § –080(6), however, § –080(5) clearly distinguishes between those enumerated exceptions and all other persons who shall continuously provide such security.

It is obvious that the General Assembly chose to treat governmental entities, including the City of Louisville, differently when it enacted the Kentucky Motor Vehicle Reparation Act. The plain language of the statute exempts the City of Louisville from the necessity of providing security for basic reparation benefits because it is a municipal corporation under statute. The effect of the majority decision in this case is to overrule the exemption provisions and in effect revise the statute by judicial fiat. Clearly this is impermissible because it violates the fundamental principle of statutory construction, that is, that an unambiguous statute is to be applied as written.

The facts in this case are almost identical with those in *Safeco Ins. Co. of America v. Brown,* 887 F.Supp. 974 (W.D.Ky. 1995), a case involving the United States Postal Service. *See also Lafferty v. United States,* 880 F.Supp. 1121 (E.D.Ky.1995). The decision of the City not to become a reparations obligor was a proper exercise of its lawful discretion for which it cannot be otherwise held liable to State Farm for basic reparation benefit reimbursement. The primary purpose of the Act is to protect accident victims, not their insurers. The Act sets out its own policy and purpose and says nothing about protecting the subrogation rights of insurers. KRS 304.39–010. There is no compelling public policy justification for allowing the insurance company to recover from either the City or Alpiger. The majority decision in this case could impact local governments at all levels in Kentucky. It is a matter of important statutory construction and application and has been incorrectly decided.

I would reverse the Opinion of the Court of Appeals and reinstate the order of the Jefferson Circuit Court.