Brian M. SCHMIDT, Appellant,

v.

Harold C. LEPPERT, Jr. and Nationwide Mutual Insurance Company, Appellees.

No. 2005–SC–000555–DG.

Supreme Court of Kentucky.

Feb. 22, 2007.

Mary Jo Wetzel, David Keith Pulliam, Valerie Denise Kessler, Kightlinger & Gray, LLP, New Albany, IN, Counsel for Appellant.

Robert E. Barnett III, Kenneth E. Dunn, Barnett, Porter & Dunn, Louisville, Counsel for Appellee.

Opinion of the Court by Justice MINTON.

Brian Schmidt, an Indiana resident, admits that he negligently caused an automobile accident in Kentucky injuring Harold C. Leppert Jr. As a result of that accident, Leppert's no fault insurance carrier, Nationwide Mutual Insurance Company, paid $4,201.85 in basic reparation benefits (BRB) for Leppert's injuries and medical expenses.

Nationwide conceded that Schmidt's automobile liability insurance carrier, American Family Insurance Company, was not responsible for reimbursing the BRB already paid because American Family did not conduct business in Kentucky, and Schmidt's policy did not provide coverage for BRB. So Nationwide sued Schmidt directly for reimbursement of BRB. Nationwide and Schmidt filed cross-motions for summary judgment, and the trial court granted judgment to Nationwide, concluding that Schmidt was personally liable for reimbursement of BRB because he was not a "secured person" under Kentucky's Motor Vehicle Reparations Act (MVRA). The Court of Appeals affirmed.

Although it initially may appear that Schmidt's purchase of an automobile liability insurance policy, which apparently meets the requirements of Indiana law, should be sufficient for him to avoid personal liability for an accident occurring outside Indiana, our analysis of Kentucky's MVRA leads to the inescapable conclusion that Schmidt is, in fact, personally liable to Nationwide for repayment of BRB because

Schmidt is not a "secured person" under the MVRA. Thus, we affirm the Court of Appeals.

 Before we examine the trial court's grant of summary judgment on its merits, we must define the proper scope of our review. In assessing the propriety of the trial court's grant of summary judgment to Nationwide, we recognize that summary judgment was appropriate only if Nationwide showed that Schmidt "could not prevail under any circumstances."[1] In ruling on a motion for summary judgment, we must view the evidence in the light most favorable to the party opposed to the motion.[2] When we review a trial court's decision to grant summary judgment, we must determine whether the trial court correctly found that there were no genuine issues of material fact.[3] Since findings of fact are not at issue in this case, the trial court's decision is entitled to no deference.[4]

 Resolution of this appeal turns on the proper interpretation of the MVRA, specifically Kentucky Revised Statutes (KRS) 304.39–070. Subsection 2 of that statute provides that "[a] reparation obligor which has paid or may become obligated to pay basic reparation benefits shall be subrogated to the extent of its obligations to all of the rights of the person suffering the injury against any person or organization other than a secured person." A "secured person" is defined at KRS 304.39–070(1) as "the owner, operator or occupant of a secured motor vehicle, and any other person or organization legally responsible for the acts or omissions of such owner, operator or occupant." As we recently held, the net joint effect of these subsections is that "if the injury was caused by an unsecured person, the injured party's reparation obligor may obtain BRB reimbursement directly from the unsecured person; but if the injury was caused by a secured person, the injured party's reparation obligor may obtain BRB reimbursement only from the secured person's reparation obligor."[5] So Nationwide may recoup the BRB from Schmidt only if Schmidt is not a "secured person." And our task is to determine if Schmidt is a "secured person" under the MVRA.

Since the MVRA defines a secured person in KRS 304.39–070(1) as "the owner, operator or occupant of a secured motor vehicle," in order for Schmidt to be a secured person, the vehicle he was driving must have been a "secured motor vehicle."[6] Unfortunately, the term "secured motor vehicle" is not explicitly defined in the MVRA. But the term "security" is defined as being "any continuing undertaking complying with this subtitle, for payment of tort liabilities, **basic reparation benefits,** and all other obligations imposed by this subtitle."[7]

---

1. *Steelvest, Inc. v. Scansteel Service Center, Inc.,* 807 S.W.2d 476, 480 (Ky.1991) (*citing Paintsville Hosp. Co. v. Rose,* 683 S.W.2d 255 (Ky.1985)).

2. *Id.*

3. *Scifres v. Kraft,* 916 S.W.2d 779, 781 (Ky. App.1996).

4. *Id.*

5. *City of Louisville v. State Farm Mutual Automobile Insurance,* 194 S.W.3d 304, 306 (Ky. 2006).

6. *Id.* at 307 ("KRS 304.39–070(1) defines a 'secured person' as 'the owner, operator or occupant of a secured motor vehicle, and any other person or organization legally responsible for the omissions of such owner, operator or occupant.' Thus, in order for the City and Alpiger to be 'secured person[s],' the vehicle involved in this accident must have been a 'secured motor vehicle.' ").

7. KRS 304.39–020(17) (emphasis added).

■ Thus, in order to have "security" on a motor vehicle, an insured's policy must include BRB. Since Schmidt's Indiana policy did not include BRB, Schmidt did not have "security," meaning that his vehicle was not a "secured motor vehicle," which, in turn, means that Schmidt was not a "secured person." [8] And because Schmidt was not a "secured person," Nationwide could sue him directly to recoup BRB it had paid to Leppert.[9]

We reject Schmidt's argument that Kentucky precedent compels a different result. Our conclusion that Schmidt is not a secured party is entirely consistent with our recent holding in *City of Louisville v. State Farm Mutual Automobile Insurance.*[10] In *City of Louisville,* we concluded that the City of Louisville and its employee were subject to a BRB subrogation suit because the City of Louisville had not provided BRB for its vehicles.[11] Although *City of Louisville* is factually distinguishable from the case at hand due to the lack of involvement of a governmental entity in this case, our ultimate conclusion in *City of Louisville* that a failure to provide BRB for a vehicle leads to potential personal liability for the owner or operator of that vehicle is entirely consistent with our conclusion that Schmidt's failure to provide BRB coverage for his vehicle leaves him subject to a BRB subrogation suit.

We also reject Schmidt's claim that he must be ·deemed a secured person under the Court of Appeals's decision in *State Farm Mutual Automobile Insurance Co. v. Harris.*[12] In *Harris,* the Harrises, who were residents of Tennessee and who were not liable for causing the accident, were involved in a three-car collision in Kentucky. The Harrises collected funds from the insurer of one of the other drivers. But the second driver, who was also not a Kentucky resident, was uninsured. The Harrises' Tennessee insurance policy did not provide for BRB, nor did their insurance carrier do business in Kentucky. So the Harrises filed a claim for benefits through the Kentucky Assigned Claims Bureau.[13] The trial court ordered the Assigned Claims Bureau to pay the Harrises $21,500.00, whereupon State Farm, the company assigned to the claim, appealed claiming that the Harrises' claim should be rejected because they did not have security on their vehicle as required by KRS 304.39–160(4).[14] Curiously, the Court of

8. *City of Louisville,* 194 S.W.3d at 307–08 ("KRS 304.39–020(17) defines 'security' as 'any continuing undertaking complying with this subtitle, for payment of tort liabilities, *basic reparation benefits, and* all other obligations imposed by this subtitle.' Since the City opted not to provide BRB coverage for its vehicles, the vehicle owned by the City and operated by Alpiger was not a 'secured vehicle' under these definitions or under KRS 304.39–080(7) or (8); thus, the City and Alpiger were not 'secured persons' under KRS 304.39–070(1) and were subject to being sued by State Farm under KRS 304.39–070(2).")

9. *See* KRS 304.39–070(2).

10. 194 S.W.3d at 304.

11. *Id.* at 307–08.

12. 850 S.W.2d 49 (Ky.App.1992).

13. *See* KRS 304.39–160(1)(b) ("[a] person entitled to basic reparation benefits because of injury covered by this subtitle may obtain them through the assigned claims plan established pursuant to the provisions relating thereto and in accordance with the provisions on time for presenting claims under the assigned claims plan if:

. . . .

(b) Basic reparation insurance applicable to the injury cannot be identified[.]")

14. KRS 304.39–160(4) provides that "[a] person who sustains injury while occupying a motor vehicle owned by such person and with respect to which security is required by the provisions on security and who fails to have such security in effect at the time of an accident in this Commonwealth causing such injury, shall not obtain through the assigned

Appeals held that the Harrises did, in fact, have security on their vehicle simply because they had an insurance policy that was valid under Tennessee law.[15]

Obviously, *Harris* is not binding on this case because the facts in *Harris* are remarkably different from the case at hand. In *Harris,* an out-of-state resident, who was not at fault in an accident, sought only to be compensated for injuries caused by an uninsured driver. Obviously, that situation is a far cry from Schmidt's attempt to use the MVRA as a shield against liability for an accident that he admittedly caused. We find *Harris* to be inapposite. And we find that the Court of Appeals's conclusion in *Harris* that simply having an insurance policy valid in another state is sufficient to cause one always to have "security" under Kentucky's MVRA to be inconsistent with our holding in *City of Louisville* and with the definition of security found in KRS 304.39–020(17). We overrule *Harris* to the extent that it holds that anyone operating a vehicle in Kentucky has "security" simply because that operator has a valid out-of-state insurance policy, even if that policy does not provide for BRB.

We are mindful that people buy insurance to avoid personal liability. And under Kentucky's MVRA, people operating automobiles in Kentucky without BRB coverage are subject to personal liability for repayment of BRB. Although such liability may be a surprise to tortfeasors from out-of-state, it is likely not a surprise to their

insurance companies whose business depends upon a sophisticated understanding of the insurance laws throughout the United States. Those companies doubtlessly have already taken Kentucky's MVRA into account in calculating the premiums they charge their policyholders. Regardless, the personal financial consequence of liability to Schmidt is, in fact, nonexistent because Schmidt's attorney concedes that American Family will indemnify Schmidt.

For the foregoing reasons, the decision of the Court of Appeals is affirmed.

All concur.

---

claims plan basic reparation benefits, including benefits otherwise due him as a survivor, unless such person's failure to have such security in effect at the time of such accident was solely occasioned by the failure of the reparation obligor of such person to provide the basic reparation benefits required by this subtitle."

**15.** *Harris,* 850 S.W.2d at 51 ("[t]he Harrises had security on their motor vehicle through Tennessee Farmers Mutual Insurance Company. By law[,] Tennessee Farmers did not have to provide for basic reparation benefits. The Harrises had insurance on their automobile. The exception in KRS 304.39–160(4) is not applicable. We agree with the trial court that the appellees are entitled to recover basic reparation benefits as a result of the accident they were involved in in the Commonwealth.").